CASANUEVA, Judge.
The mother, T.D., appeals the final judgment terminating her parental rights to her children, T.D. and D.D. Finding no reversible error, we affirm and write only to discuss one issue: the applicability of the federal Indian Child Welfare Act[1] (ICWA), interjected here late into the final termination of parental rights (TPR) hearing, and the need to ascertain its impact at the earliest moment in TPR proceedings.
As counsel for the Department of Children and Family Services was about to begin rebuttal closing argument at the final TPR hearing, the mother’s counsel announced to the trial court:
Your Honor, as an officer of the court, I need to advise the court — I just found out seconds ago that my client — her mother — her grandmother — has Indian Cherokee in her, and I was just reviewing the legal advisory that I obtained, that the Indian Child Welfare Act may interfere with this termination of parental right file. Had I known that, I would have advised the court at the beginning of the trial.
The mother’s counsel made no motion to stay the proceedings to determine whether the children’s putative American Indian ancestry made the ICWA relevant.
The ICWA was enacted by Congress to address the problem caused by separating large numbers of Indian children from their Indian families and tribes through certain state proceedings, including TPR. See 25 U.S.C. § 1901(4)-(5)[2]; Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). For an Indian child who does not live on his or her tribe’s reservation, as in this case, section 1911(c) of the ICWA gives to *475 the child’s Indian custodian or the child’s Indian tribe the right to intervene at anytime in a state court TPR proceeding concerning the Indian child. Pursuant to section 1911(b), this right is exercised through a petition by either the child’s parent, Indian custodian, or tribe to transfer the proceedings to the jurisdiction of the appropriate tribe; such transfer may be declined by the tribal court.
In the case before us, the record contains no evidence of such an application for transfer, either orally or in writing, or even any evidence of the child’s Indian ancestry. Furthermore, the. record does not provide evidence of even a proffer to the court of an intent to invoke the provisions of the federal act. We do not regard the passage quoted above where the trial counsel suggests the possibility of Indian ancestry as sufficient to .qualify as a “petition” for purposes of section 1911(b). Cf. In re A.G.-G., 899 P.2d 319 (Colo.Ct.App. 1995) (holding that absent evidence that the child was an “Indian child,” the ICWA was not applicable in a TPR proceeding even though the mother and father informed the caseworker and also testified that each had Indian heritage, because nothing in the record established the parents’ or the child’s membership or eligibility for membership in any tribe; also the state agency gave notice' of the TPR proceedings to the Secretary of the Interior pursuant to the ICWA,' but no tribe responded). Moreover, because counsel’s 'information to the court' did not precisely state the grounds or request ■ any relief that the court denied, we cannot treat the passage as sufficient to preserve the matter for appellate review. See Pagan v. Sarasota County Pub. Hosp. Bd., 884 So.2d 257 (Fla. 2d DCA 2004).
This situation puts into sharp focus the need for early investigation to determine whether American Indian children are involved in child custody or TPR proceedings. To insure compliance with the ICWA and to avoid the expenditure of state ■ resources when the child’s Indian tribe should and wants to exercise its jurisdiction, -we suggest that the Department, at the initiation of proceedings, or the trial court when it first is involved, inquire of the parents or relatives to determine the applicability of the ICWA. If the ICWA were presumptively applicable to this case, and had its procedures been properly'followed, the great expenditure of scarce- judicial and state resources that this case represents could have been avoided.
Affirmed..
WHATLEY and NORTHCUTT, JJ., concur. -

. 25 U.S.C. §§ 1901-1963 (2003).

. 25 U.S.C. § 1901 provides:
Recognizing the special relationship between the United States and the Indian tribes and their members and the Federal responsibility to Indian people, the Congress finds—
[[Image here]]
(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and
(5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.