*In re* COMPLAINT OF McLEODUSA
TELECOMMUNICATIONS SERVICES, INC

Docket No. 269263. Submitted January 8, 2008, at Lansing. Decided
January 22, 2008, at 9:05 a.m.

McLeodUSA Telecommunications Services, Inc., a service provider
that operates a fiber-optic telecommunications system in Michi-
gan, sought from Commerce Charter Township an updated permit
for access to, and ongoing use of, the township's public rights-of-
way for its aerial fiber-optic cable. The form for the permit, created
by the Public Service Commission (PSC) in conformance with the
provisions of the Metropolitan Extension Telecommunications
Rights-of-Way Oversight Act (METRO act), MCL 484.3101 *et seq.*,
provided that the telecommunications provider shall obtain liabil-
ity insurance for sudden and accidental environmental contami-
nation. The township requested proof of such insurance, and
McLeodUSA requested that the township waive the insurance
requirement. The township refused the request on the ground that
the insurance was required under the METRO act. A mediator,
appointed under MCL 484.3106(2) to resolve the dispute, deter-
mined that the terms of the standard form were negotiable and
recommended that the insurance be required only if McLeodUSA
placed any facilities underground. The township submitted a
request for review by the PSC, and the PSC adopted the recom-
mendation of the mediator. The township appealed.

The Court of Appeals *held*:

1. MCL 484.3106 authorized the PSC both to accept a petition
to amend the unilateral permit form involved and to impose a
change to the insurance provision to reflect its conclusion that the
aboveground activities did not pose the danger of environmental
contamination that underground activities pose. The provisions of
the METRO act indicate a comprehensive process to allow the PSC
to interact with the parties to impose reasonable permit terms
reflecting the practicalities of the situation.

2. MCL 484.3106(1) requires the parties to begin with a
standard permit form before either agreeing to changes or seeking
mediation or resolution through the PSC. It is not only the

municipality that can request an amendment of the forms. The order of the PSC was not clearly unlawful or unreasonable.

3. The actions of the PSC do not clearly contradict the stated purposes of the METRO act.

4. The distinction between aerial and underground facilities drawn by the PSC was reasonable.

5. The constitutional authority given to municipalities to control their public rights-of-way does not allow the township to impinge on matters of statewide concern governed by the METRO act or to frustrate the purposes of the act. The PSC's decision did not usurp the township's ability to reasonably control its public rights-of-way.

Affirmed.

Tᴇʟᴇᴄᴏᴍᴍᴜɴɪᴄᴀᴛɪᴏɴs — Rɪɢʜᴛs ᴏғ Wᴀʏ — Pᴇʀᴍɪᴛs.

The provisions of the Metropolitan Extension Telecommunications Rights-of-Way Oversight Act establish a comprehensive process that allows the Public Service Commission to interact with a telecommunications provider and a municipality and impose reasonable right-of-way permit terms for the use of public rights-of-way; a municipality and a service provider may agree to amend the standard permit form approved by the commission, and any dispute may be resolved through mediation or the Public Service Commission (MCL 484.2101 *et seq.*).

*Clark Hill PLC* (by *Roderick S. Coy* and *Paul F. Novak*) for McLeodUSA Telecommunications Services, Inc.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David A. Voges* and *Michael A. Nickerson*, Assistant Attorneys General, for the Michigan Public Service Commission.

*Adkison, Need & Allen, PLLC* (by *Phillip G. Adkison* and *Lisa J. Hamameh*), for Commerce Charter Township.

Amicus Curiae:

*Bauckham, Sparks, Rolfe, Lohrstorfer & Thall, P.C.* (by *John H. Bauckham* and *Robert E. Thall*), for the Michigan Townships Association.

Before: KELLY, P.J., and CAVANAGH and O'CONNELL, JJ.

PER CURIAM. Appellant Commerce Charter Township appeals as of right from the February 21, 2006, order of appellee Public Service Commission (PSC) approving a telecommunications permit between appellant and appellee McLeodUSA Telecommunications Services, Inc. (McLeodUSA). We affirm.

## I. BASIC FACTS AND PROCEDURAL BACKGROUND

McLeodUSA is a service provider that operates a fiber-optic telecommunications system throughout much of southern Michigan. It initially obtained a permit for access to, and ongoing use of, appellant's public rights-of-way for its fiber-optic cables under MCL 484.2251, a provision of the Michigan Telecommunications Act (MTA), MCL 484.2101 *et seq.*, the predecessor of the Metropolitan Extension Telecommunications Rights-of-Way Oversight Act (METRO act), MCL 484.3101 *et seq.* McLeodUSA's facilities in the township that are subject to the act consist of aerial fiber-optic cable that is strung between utility poles located in the rights-of-way.

The METRO act went into effect on November 1, 2002. It was designed, among other things, to encourage the introduction of new entrants to the telecommunications industry, to encourage investment in telecommunications infrastructure, to streamline the process of authorizing access to public rights-of-way for telecommunications providers, to ensure the reasonable control and management of public rights-of-way by municipalities and townships, and to provide a resolution process for telecommunications providers and municipalities in disputes over rights-of-way. MCL 484.3101(2). To this end, under the METRO act, the PSC was directed to

"prescribe the form and application process to be used in applying to a municipality for a permit . . . ." MCL 484.3106(1). In a collaborative process involving participating providers and municipalities, the PSC subsequently created two "standard" or "stock" permit forms, a "unilateral" form and a "bilateral" form. The initial forms to be used were those approved by the PSC as of August 16, 2001. MCL 484.3106(1). However, these stock forms were revised by the PSC on December 6, 2002.

McLeodUSA sought an updated permit issued under the METRO act. Paragraph 6.1.2 of the unilateral form, which is at issue in this dispute, provides that the telecommunications provider shall obtain liability insurance for sudden and accidental environmental contamination in the amount of at least $500,000 and providing coverage for claims discovered within three years after the term of the policy.[1] On May 26, 2004, McLeodUSA submitted a permit application containing the disputed provision. On November 14, 2004, appellant informed McLeodUSA that, before the issuance of a new permit, it would have to submit proof of environmental-contamination insurance. McLeodUSA subsequently responded and requested that the township waive this insurance requirement. McLeodUSA first maintained that its telecommunications facilities were already in place in the township and that it had no current or future plans to add any more. McLeodUSA also contended that, if it needed to perform any work in the rights-of-way in the future, it would require that its contractors obtain the liability insurance. However, the township refused the request on the ground that the insurance was a requirement under the METRO act.

---

[1] We note that the bilateral form also contains this requirement.

On October 14, 2005, McLeodUSA requested the appointment of a mediator under MCL 484.3106(2) to resolve the parties' dispute. After reviewing the parties' positions, the mediator found that the METRO act does not indicate that the terms of the standard form permits were nonnegotiable. He recommended that the PSC revise, rather than eliminate, the environmental-contamination insurance requirement to make the obligation to purchase the insurance contingent on McLeodUSA's placing any new or existing facilities underground. The township subsequently submitted a request for PSC review and a resolution of the dispute pursuant to MCL 484.3106(2).

In an order dated February 21, 2006, the PSC adopted the recommendation of the mediator. The PSC first determined that the statutory language clearly provided that the parties could agree on different permit terms from those in the standard forms, and that the PSC was authorized to resolve the dispute where the parties could not agree. It then found that the environmental risks presented by underground installation and maintenance significantly differed from those involved in the installation of aerial lines. It found that the township's litany of potential hazards in the installation and maintenance of aerial facilities were either those of the type that "exists constantly on land that is adjacent to a public road" or were "infrequent or improbable weather and accident related risks" that were not the type of environmental threats that should be insured against by McLeodUSA. It subsequently determined that paragraph 6.1.2 of the permit between the parties should be revised to "make the purchase and maintenance of sudden and accidental environmental contamination insurance in the amount of $500,000 contingent upon McLeodUSA Telecommunications Services' decision to place any new or existing telecommu-

nications facilities underground within the rights-of-way of the Charter Township of Commerce."

The township now appeals.

## II. THE PSC'S INTERPRETATION OF THE RELEVANT STATUTORY LANGUAGE

The township first argues, under various theories, that both the PSC's interpretation of its power to alter the form contract and the specific alteration it made here were not authorized under the METRO act. In *Attorney General v Pub Service Comm*, 269 Mich App 473, 479-480; 713 NW2d 290 (2006), this Court provided the following general standard of review of PSC decisions:

> The standard of review for PSC orders is narrow and well-defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. A party allegedly aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. An order is unreasonable if it is arbitrary, capricious, or not totally supported by the evidence.

> A final order of the PSC must be authorized by law and supported by competent, material, and substantial evidence on the whole record.

> We defer to the PSC's administrative expertise, and will not substitute our judgment for that of the PSC. We give great weight to any reasonable construction of a regulatory scheme that the PSC is empowered to administer, but we may not abandon our responsibility to interpret statutory language and legislative intent. We do not afford the same measure of deference to an agency's initial interpretation

of new legislation as we do to a longstanding interpretation. "Whether the PSC exceeded the scope of its authority is a question of law that we review de novo." [Citations omitted.]

Moreover, merely establishing that another interpretation of a statute is reasonable does not satisfy a party's burden of proving by clear and convincing evidence that the PSC's interpretation is unlawful and unreasonable. *In re Michigan Cable Telecom Ass'n Complaint*, 239 Mich App 686, 690; 609 NW2d 854 (2000).

The specific provision of the act at issue, MCL 484.3106, provides, in pertinent part:

(1) For applications and permits issued after the effective date of this act, the commission shall prescribe the form and application process to be used in applying to a municipality for a permit under section 15 and the provisions of a permit issued under section 15. The initial application forms and, unless otherwise agreed to by the parties, permit provisions shall be those approved by the commission as of August 16, 2001.

(2) If the parties cannot agree on the requirement of additional information requested by the municipality or the use of additional or different permit terms, either the municipality or the provider shall notify the commission, which shall appoint a mediator within 7 days from the date of the notice to make recommendations within 30 days from the date of the appointment for a resolution of the dispute. The commission may order that the permit be temporarily granted pending resolution of the dispute. If any of the parties are unwilling to comply with the mediator's recommendations, any party to the dispute may within 30 days of receipt of the recommendation request the commission for a review and determination of a resolution of the dispute. Except as provided in subsection (3), the determination by the commission under this subsection shall be issued within 60 days from the date of the request to the commission. The interested parties to the dispute

may agree to an extension for up to 30 days of the 60-day requirement under this subsection.

This Court's goal in statutory interpretation is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. *People v Gubachy*, 272 Mich App 706, 709; 728 NW2d 891 (2006), citing *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). "Statutory language should be construed reasonably, keeping in mind the purpose of the act." *In re McEvoy*, 267 Mich App 55, 60; 704 NW2d 78 (2005). "In other words, the Court must consider the object of the statute and the harm it is designed to remedy and apply a reasonable construction that best accomplishes the statute's purpose." *Gubachy, supra* at 710, citing *People v Lawrence*, 246 Mich App 260, 265; 632 NW2d 156 (2001). In doing so, this Court considers a variety of factors and applies principles of statutory construction, and should always use common sense. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994); *Proudfoot v State Farm Mut Ins Co*, 254 Mich App 702, 708; 658 NW2d 838 (2003), rev'd in part on other grounds 469 Mich 476 (2003).

In the instant case, we conclude that the plain language of MCL 484.3106 authorized the PSC both to accept a petition from McLeodUSA to amend the unilateral permit form and to impose a change to the environmental-insurance provision to reflect its conclusion that the provider's aboveground activities did not pose the danger of environmental contamination present in underground activities.

In our view, the most important principle to observe when resolving this case is that subsections of a statutory section "are not to be read discretely, but as part of

a whole." *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 167-168; 680 NW2d 840 (2004); see, also, *Apsey v Mem Hosp*, 477 Mich 120, 130; 730 NW2d 695 (2007) ("it is a well-settled rule of law that, when construing a statute, a court must read it as a whole"). When read as a whole, the provisions indicate a comprehensive process allowing the PSC to interact with the parties to impose reasonable permit terms that reflect the practicalities of the situation. In contrast, throughout its arguments, the township reads the statute selectively, and appears to disregard the sections that refute its position.

For example, to support its contention that the use of the stock form, and thus the environmental-insurance requirement, was legislatively mandated, the township largely ignores the provisions of MCL 484.3106(2) and chooses to focus on part of MCL 484.3106(1); particularly the direction that the initial application forms "shall" be the ones approved by the PSC as of August 16, 2001. However, contrary to the township's somewhat contradictory positions on appeal, the statutory language does not mandate either the use of the forms approved as of August 16, 2001, or the use of the forms that were revised by the PSC on December 6, 2002. The township's original claim that the statute mandates the use of the forms approved as of August 16, 2001, largely ignores the inclusion of the terms "initial" in the language of MCL 484.3106(1), indicating that the "initial application forms . . . shall be those approved by the commission as of August 16, 2001." We find this first position untenable, especially given the PSC's approval of the amended forms.

The township later concedes this fact, yet raises a concurrent argument that the new forms must be used without changes, and that the phrase "initial applica-

tion forms" is simply no longer applicable because the PSC has, in fact, changed the forms. However, we find this argument to be unpersuasive. Such a reading essentially ignores the phrase "unless otherwise agreed to by the parties" included in the remainder of MCL 484.3106(1). As did the PSC, we instead read MCL 484.3106(1) as requiring only that the parties begin with a standard permit form, before either agreeing to changes or seeking mediation or resolution through the PSC. Given that the township's contrary interpretation of MCL 484.3106(1) leaves literally nothing for the PSC to do, and would render MCL 484.3106(2) effectively useless, we find the PSC's interpretation in keeping with the Supreme Court's directive that " '[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.' " *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521, 533-534; 697 NW2d 895 (2005), quoting *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). And while the township's analysis might be a plausible reading of the statutory language, this does not render the PSC's alternate interpretation of this provision unreasonable. See *In re Michigan Cable Telecom Ass'n Complaint, supra* at 690.

The township also argues that, to the extent that MCL 484.3106(2) supports an amendment of the stock safe-harbor permit forms, only the municipality can request such an amendment.[2] We find the PSC's contrary conclusion reasonable here. Apart from the inher-

---

[2] We find meritless the township's concurrent assertion that McLeodUSA's request to "waive" a mandatory permit provision was not a request for a "different" permit term under the statute. McLeodUSA sought a revision that would specifically change its responsibilities under the contract. This is a different term than that initially required in the form contract.

ent incongruity of arguing that the Legislature intended only the municipality to change what it otherwise argues are "mandatory" permit forms, the township fails to present any support for its contention. We find the township's interpretation of the language in MCL 484.3106(2) strained. Had the Legislature intended only the municipality to have the power to suggest new or different permit terms, it could easily have instead written, "If the parties cannot agree *on the requirement of additional information or the use of additional or different permit terms requested by the municipality*," or other words to that effect. The PSC's reading of the first sentence of MCL 484.3106(2) is a more natural one and is reasonable in light of the totality of both MCL 484.3106(1) and (2), which envision a contractual meeting of the minds, albeit perhaps with ultimate decision-making authority resting in the PSC. Thus, we find the PSC's interpretation of this provision reasonable.[3]

The township also appears to argue that McLeodUSA could not later request additional or different permit provisions, and that the PSC could not grant its request, because McLeodUSA initially used the "unilateral" permit form. However, the township provides no support for this assertion. It fails to discuss the differences between the permit forms, any rationale for those differences in the creation or utilization of the forms, or any specific language in either the forms or the statute that supports the township's position. A party may not announce an assertion of error and then leave it to the

[3] The PSC's decision is further supported by the language contained in the bilateral permit concerning approved amendments to the form permit, as discussed later in this opinion. When read as a whole, the statute does not clearly indicate a legislative intent to either freeze the stock permit forms or to place all power to amend them in the municipality.

courts to discover and rationalize the basis of the claim of error. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Accordingly, we decline to address the issue. See *id.*

Nevertheless, even were we to find this issue preserved, we would conclude that the township's argument lacks merit. A comparison of the two forms reveals that the bilateral form contains the following language: "13.5 <u>Amendment</u>. Except as set forth in Section 2.1 this Permit may be amended by the written agreement of Municipality and Company."[4]

The unilateral form does not contain a similar provision. This language in § 13.5 of the bilateral form gives some validity to the argument that, if the parties intended to modify the stock permit terms, the bilateral agreement form should have been used. However, as aptly noted by the mediator below, the township never approved the permit, and McLeodUSA balked at the request for proof of insurance—and ostensibly then withdrew what could otherwise be termed its "unconditional" application—before a meeting of the minds could be reached. Rather than amend the unilateral permit form, the PSC could have instead ordered McLeodUSA to resubmit a "bilateral" permit form with its proposed amendment. However, because the township would have then presumably rejected this application, with the changed language in paragraph 6.1.2, and the dispute would simply have returned to the PSC, such an order would have simply wasted the PSC's resources. Because the township can show no prejudice

---

[4] Section 2.1 provides for the grant of a permit in those portions of the rights-of-way identified in "Exhibit A," and the modification of Exhibit A. It also provides that the municipality shall not unreasonably condition or deny any request for a modification of Exhibit A, and provides for a challenge to any denial to the municipality's governing body.

from any irregularity in the process here, since it would have been in the same position had McLeodUSA used the bilateral form, it cannot show that it is entitled to any relief on this issue. See *Michigan Bell Tel Co v Pub Service Comm*, 332 Mich 7, 37; 50 NW2d 826 (1952).

Moreover, none of the statutory language above provides support for the township's underlying assertion that a telecommunications provider cannot request additional or different permit provisions from the PSC. In fact, the language in the "mandated" bilateral form undermines this argument, as well as the other arguments concerning the immutability of the "stock" form. This position is based on an assertion that the only amendments that can be made to the stock permit form are those that place additional burdens or conditions on the company pursuant to the municipality's authority under MCL 484.3115. However, this directly contradicts the permit language in § 13.5 that the parties may *agree on* (almost) any amendments to the stock permit form, not simply additional requirements imposed by the municipality. This position also relies on an assertion that much of MCL 484.3106(1) is now surplusage, as well as on the strained reading of MCL 484.3106(2) we discussed above. It further ignores the additional language of MCL 484.3106(2), which allows "either the municipality or the provider" to notify the PSC that the parties cannot reach an agreement. Nor does the language of MCL 484.3115 support this position.[5] We thus

---

[5] MCL 484.3115 provides:

(1) Except as otherwise provided in this section, a municipality shall, upon application, grant to providers a permit for access to and the ongoing use of all public rights-of-way located within its municipal boundaries. A municipality shall act reasonably and promptly on all applications filed for a permit involving an easement or public place.

find that neither the permit form nor the language of the statute clearly supports the township's alternative argument that only the municipality has the power to force its changes on a provider.

For these reasons, we find that the PSC's order was not clearly unlawful or unreasonable under the language of MCL 484.3106.

### III. FRUSTRATION OF THE PURPOSES OF THE METRO ACT

The township also argues that the PSC's order clearly frustrates the enumerated purposes of the METRO act. We disagree. These purposes are set forth in MCL 484.3101(2):

(2) This section shall not limit a municipality's right to review and approve a provider's access to and ongoing use of a public right-of-way or limit the municipality's authority to ensure and protect the health, safety, and welfare of the public.

(3) A municipality shall approve or deny access under this section within 45 days from the date a provider files an application for a permit for access to a public right-of-way. A provider's right to access and use of a public right-of-way shall not be unreasonably denied by a municipality. A municipality may require as a condition of the permit that a bond be posted by the provider, which shall not exceed the reasonable cost to ensure that the public right-of-way is returned to its original condition during and after the provider's access and use.

(4) Any conditions of a permit granted under this section shall be limited to the provider's access and usage of any public right-of-way.

(5) A provider undertaking an excavation or constructing or installing facilities within a public right-of-way or temporarily obstructing a public right-of-way, as authorized by the permit, shall promptly repair all damage done to the street surface and all installations on, over, below, or within the public right-of-way and shall promptly restore the public right-of-way to its preexisting condition. The authority shall also have the jurisdiction to require the repair and restoration of any right-of-way, including state right-of-way, which has not been repaired or restored after installation.

The purpose of this act is to do all of the following:

(a) Encourage competition in the availability, prices, terms, and other conditions of providing telecommunication services.

(b) Encourage the introduction of new services, the entry of new providers, the development of new technologies, and increase investment in the telecommunication infrastructure in this state.

(c) Improve the opportunities for economic development and the delivery of telecommunication services.

(d) Streamline the process for authorizing access to and use of public rights-of-way by telecommunication providers.

(e) Ensure the reasonable control and management of public rights-of-way by municipalities within this state.

(f) Provide for a common public rights-of-way maintenance fee applicable to telecommunication providers.

(g) Ensure effective review and disposition of disputes under this act.

(h) Allow for a tax credit as the sole means by which providers can recover the costs under this act and to insure that the providers do not pass these costs on to the end-users of this state through rates and charges for telecommunication services.

(i) Promote the public health, safety, welfare, convenience, and prosperity of this state.

(j) Create an authority to coordinate public right-of-way matters with municipalities.

As with its position on the statutory language in MCL 484.3106 already discussed, the township's interpretation of MCL 484.3101(2) focuses exclusively on the purposes of the act favorable to it while ignoring the other listed purposes. When read as a whole, these stated purposes to a large extent favor the telecommunications provider and the customer, not the township.

Even the provision to ensure for control and manage-
ment of the public rights-of-way by the municipalities
under MCL 484.3101(2)(e) contains the caveat that the
control must be "reasonable." Nor, contrary to the
township's argument, does the PSC's action run clearly
contrary to these purposes. We agree with the PSC that
the township's attempt to limit the PSC's ability to
resolve disputes and to mediate different permit provi-
sions would frustrate the purposes of the act by discour-
aging the introduction of new services or the entry of
new providers. This could thus have the result of
frustrating the stated purpose of increasing investment
in the state's telecommunications infrastructure. With
regard to the PSC's determination to modify the insur-
ance provision in the instant case, its decision to remove
an unnecessary, and perhaps costly,[6] expense arguably
promotes participation by providers in new technolo-
gies and services. At the least, it does not clearly run
contrary to these purposes.

Were we to adopt the township's position, it would
also have the effect of effectively negating the "review
and disposition of disputes" purpose in MCL
484.3101(2)(g). And while the township argues some-
what convincingly that it will have to invest more of its
resources for arguably less return should it choose to
hire attorneys and engineers to review proposed permit
changes, the listed purposes do not contain an intent to
protect the municipalities' finances.

---

[6] For the purpose of this appeal, we take McLeodUSA's contention that
environmental insurance would be expensive to obtain at face value
because neither party has presented evidence of the actual premium
amount for these types of policies. However, such an assertion is not
untenable, particularly given the possible number of policies McLeodUSA
or other providers would have to obtain to manage lines in multiple
municipalities.

For these reasons, we find that the PSC's actions do not clearly contradict the stated purposes of the METRO act.

### IV. THE PSC'S DISTINCTION BETWEEN AERIAL AND UNDERGROUND FACILITIES

The township also argues that the PSC arbitrarily, and thus improperly, drew a distinction between the environmental risks inherent in constructing and maintaining underground telecommunications lines and the risks of maintaining aerial lines. We find that the PSC did not clearly err in its factual determination and that its distinction was reasonable. The township did not present any statistical, empirical, or even anecdotal evidence to suggest that any type of environmental contamination could occur from a downed telecommunications line. The potential leakage of gas or hydraulic fluid from the maintenance vehicles used while working on aerial lines, while perhaps a remote possibility, does not rise to the level of the risk involved in digging for new cables, with the attendant risk of striking sewage lines, gas lines, underground storage tanks, or other similar hazards. The PSC's decision gives credence to the actual risks involved, while removing the insurance requirement when complying with it would place an unreasonable burden on the provider. Giving deference to the PSC's expertise in overseeing all manner of hazardous substances, we hold that the PSC's decision to require McLeodUSA to obtain environmental insurance only if it installs or services underground lines was reasonable under the circumstances.

### V. THE TOWNSHIP'S AUTHORITY TO REASONABLY CONTROL ITS PUBLIC RIGHTS-OF-WAY

The township lastly argues that the PSC's decision usurps its authority to control its public rights-of-way.

It maintains that the PSC should have given deference to the township's determination that the insurance provision was necessary to protect the public health, safety, and welfare. It also contends that the PSC's order intrudes upon the township's constitutional rights under Const 1963, art 7, § 29, which grants municipalities the right to "the reasonable control of their highways, streets, alleys and public places . . . ."

The portion of the township's argument that focuses on the grant of power contained in MCL 484.3115(2) does not address the limitation in MCL 484.3115(3) that "[a] provider's right to access and use of a public right-of-way *shall not be unreasonably denied* by a municipality." (Emphasis added.) To the extent that the township agrees that its control must be reasonable, it generally reiterates its arguments above that it was reasonable for the township to insist upon a mandatory provision in the safe-harbor form. As discussed above, we do not find the township's underlying arguments persuasive.

The township also relies on Const 1963, art 7, § 29 in what appears to be an argument that the PSC usurped the township's constitutional authority to reasonably control its rights-of-way. However, the question whether the PSC's decision unlawfully limits the scope of the township's ability to reasonably control its rights-of way under the Michigan Constitution was not raised below and is thus not preserved. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). We review unpreserved claims of constitutional error for outcome-determinative plain error. *In re Hildebrant*, 216 Mich App 384, 389; 548 NW2d 715 (1996).

Const 1963, art 7, § 29 provides:

> No person, partnership, association or corporation, public or private, operating a public utility shall have the right

to the use of the highways, streets, alleys or other public places of any county, township, city or village for wires, poles, pipes, tracks, conduits or other utility facilities, without the consent of the duly constituted authority of the county, township, city or village; or to transact local business therein without first obtaining a franchise from the township, city or village. Except as otherwise provided in this constitution the right of all counties, townships, cities and villages to the reasonable control of their highways, streets, alleys and public places is hereby reserved to such local units of government.

However, in *City of Taylor v Detroit Edison Co*, 475 Mich 109; 715 NW2d 28 (2006), our Supreme Court discussed the extent of the power granted by this section, and the limitations in this section and in Const 1963, art 7, § 22. It held that, consistent with its longstanding precedent, a municipality's exercise of "reasonable control" over its streets cannot impinge on matters of statewide concern, nor can the municipality regulate in a manner that conflicts with state law. *Taylor, supra* at 112, 116-118. The METRO act is a state law that specifically governs the issuance of permits for the use of rights-of-way by telecommunications providers. It also specifically provides for the resolution of disputes between municipalities and providers. We thus find that the constitutional provision relied on by the township cannot prevail over this state law or effectively frustrate the purposes for which the METRO act was enacted.[7]

Similarly, amicus Michigan Townships Association bases a related argument on the premise that the provisions in the METRO act should have been liberally

---

[7] In its reply brief, the township acknowledges *Taylor*, and this limitation, but reiterates its other arguments and maintains that, because it was following the requirements under the METRO act, using the mandatory permit forms, its actions were both consistent with state law and reasonable. We are not persuaded by this argument.

construed in the township's favor under Const 1963, art 7, § 34. However, as with its interpretation of Const 1963, art 7, § 29, our Supreme Court has interpreted this provision to impose broad, but not unlimited, authority upon local governments " 'to act on all matters of local concern not forbidden by state law.' " See *Wayne Co v Hathcock*, 471 Mich 445, 460; 684 NW2d 765 (2004), quoting *Airlines Parking, Inc v Wayne Co*, 452 Mich 527, 537 n 18; 550 NW2d 490 (1996). We find a difference between providing a liberal construction of a statute in the township's favor and striking out a good portion of it in order to have the township gain plenary power over provider access to public rights-of-way in contravention of the statute's stated aims.

We thus find that the township has not shown that the PSC's decision usurped the township's ability to reasonably control its public rights-of way.[8]

Affirmed.

---

[8] We note that amicus Michigan Townships Association also raises a separate claim that the METRO act constitutes an unconstitutional delegation of legislative authority to the PSC. This issue was not raised below. Despite appellee McLeodUSA's decision to address this issue, it was not in fact raised in appellant township's appellate brief. An appellee is limited to the issues raised by the appellant unless it cross-appeals as provided in MCR 7.207. *People v Farquharson*, 274 Mich App 268, 279; 731 NW2d 797 (2007); *Barnell v Taubman Co, Inc*, 203 Mich App 110, 123; 512 NW2d 13 (1993). Thus, McLeodUSA cannot now seek, for example, to have this Court determine that the METRO act contains a constitutional delegation of authority. Pursuant to MCR 7.212(H)(2), an amicus brief "is limited to the issues raised by the parties." Thus, we decline to address this claim here.

Likewise, the association also argues that the PSC employed an incorrect standard when it reviewed the dispute between McLeodUSA and the township. This issue was not raised below, and has not been raised by appellant. Pursuant to MCR 7.212(H), we will not address this issue further.