EMPSON-LAVIOLETTE v CRAGO

Docket No. 284041. Submitted September 4, 2008, at Grand Rapids. Decided September 11, 2008, at 9:05 a.m. Leave to appeal denied, 482 Mich 1077.

Shannon and Tricia Scott petitioned the Van Buren County Probate Court for guardianship of Z.E., a member of the Pokagon Band of Potawatomi Indians. The petition was accompanied by written consents by Z.E.'s parents, Stephanie Empson-Laviolette and Nathaniel R. Crago. The court, Frank D. Willis, J., appointed the Scotts as temporary guardians. Empson-Laviolette petitioned the court to terminate the guardianship and return Z.E. to her, claiming that her consent to the guardianship had been obtained by fraud. The Scotts sought sole custody of the child in the Van Buren Circuit Court, and Empson-Laviolette, relying on § 1913(b) of the Indian Child Welfare Act (ICWA), 25 USC 1913(b), sought the return of Z.E. to her custody. The circuit court, Frank D. Willis, J., granted sole custody of Z.E. to the Scotts, ruling that the ICWA did not apply to the guardianship and custody proceedings. Empson-Laviolette appealed.

The Court of Appeals *held*:

1. 25 USC 1913(b) provides that any parent or Indian custodian of an Indian child may withdraw consent to a foster care placement under state law at any time and that, upon such withdrawal, the child shall be returned to the parent or Indian custodian. 25 USC 1903(1) defines "foster care placement" to include removal of an Indian child from its parent and placement in the home of the child's guardian. The ICWA applied to the guardianship proceeding and the probate court erred when it failed to return Z.E. to Empson-Laviolette after she revoked her consent to the Scotts' guardianship of Z.E.

2. MCL 722.26b(4) provides for a stay of guardianship proceedings in the probate court when the child's guardian brings a child custody action in the circuit court. Because MCL 722.26b(4) is an obstacle to providing Empson-Laviolette the minimum protections afforded by the ICWA, it is preempted by the ICWA. Accordingly, upon receiving Empson-Laviolette's petition to terminate the Scotts' guardianship of Z.E., the probate court should have lifted

the stay and addressed the merits of the petition seeking Z.E.'s return to Empson-Laviolette's custody pursuant to 25 USC 1913(b).

Order granting custody to the Scotts vacated; case remanded for termination of the Scotts' guardianship and a return of Z.E. to Empson-Laviolette's custody.

1. INDIANS — INDIAN CHILD WELFARE ACT — WITHDRAWAL OF CONSENT TO FOSTER CARE PLACEMENT.

A parent of an Indian child can withdraw consent to a foster care placement under state law at any time and have the child returned to that parent (25 USC 1913[b]).

2. INDIANS — INDIAN CHILD WELFARE ACT — WITHDRAWAL OF CONSENT TO FOSTER CARE PLACEMENT — GUARDIANSHIPS — STAY OF PROCEEDINGS.

The statute that provides for a stay of guardianship proceedings when the child's guardian brings a child custody action in the circuit court is preempted by the Indian Child Welfare Act when a parent of an Indian child withdraws consent to guardianship and seeks a return of the child (25 USC 1913[b]; MCL 722.26b[4]).

Michigan Indian Legal Services, Inc. (by *Thomas R. Myers*), for the plaintiff.

*Schuitmaker, Cooper, Schuitmaker, Cypher & Knotek, P.C.* (by *Theresa J. Cypher*), for the defendant.

Before: METER, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM. Plaintiff, Stephanie Empson-Laviolette (Empson), an enrolled member of the Pokagon Band of Potawatomi Indians (Tribe), appeals by right the trial court's order granting sole custody of her son, Z.E., to appellees Shannon and Tricia Scott. Below, pursuant to the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, Empson moved the trial court to dismiss the Scotts' motion for custody and to return Z.E. to her custody because she had withdrawn her consent to the Scotts' guardianship of Z.E. Because the ICWA allows the parent of an Indian child who consents to a foster

care placement of the child to withdraw consent to the placement at any time and to have the child returned to the parent's custody, we agree with Empson that she was entitled to have Z.E. returned to her custody. Therefore, we vacate the trial court's order granting custody of Z.E. to the Scotts and remand this case for an order terminating the Scotts' guardianship of Z.E. and for the effectuation of the return of Z.E. to Empson.

### I. BASIC FACTUAL AND PROCEDURAL HISTORY

On July 21, 1996, Z.E. was born to Empson and defendant Nathaniel Crago. It is undisputed that Z.E., like his mother, is an enrolled member of the Tribe.

On August 16, 2004, Shannon and Tricia Scott filed a petition for guardianship of Z.E.[1] The box next to question 5 of the petition, which read, "The minor is a member of/eligible for membership in an American Indian tribe/band," was not checked. Consent waivers to the guardianship signed by Empson and Crago accompanied the Scotts' petition. On August 31, 2004, the trial court appointed the Scotts temporary guardians of Z.E.[2] The guardianship order specifically stated that Z.E.'s custody could not be changed from the Scotts without the consent and order of the trial court.

On December 1, 2004, Empson, claiming that her consent to the Scotts' guardianship of Z.E. had been

---

[1] Before living with the Scotts, Z.E. lived with his maternal grandparents, Empson's parents. Empson placed Z.E. in the care of the Scotts in the summer of 2004 after allegations arose that her father had abused Z.E.

[2] We recognize that the guardianship proceedings were before the probate court, see MCL 700.1302(c), which provides that a probate court has exclusive jurisdiction over guardianship proceedings, and that the subsequent custody proceedings were before the circuit court. However, because the probate judge presided over the custody proceedings, see MCL 722.26b(5), we refer to the probate court and the circuit court as the trial court.

fraudulently obtained, moved to terminate the guardianship and to have Z.E. returned to her custody. Empson's motion contained no indication that Z.E. was Native American. On February 2, 2005, the Scotts moved for sole custody of Z.E.[3] The trial court subsequently stayed the guardianship proceedings. It ordered that the Scotts were to remain Z.E.'s guardians until further order of the court.

Several months later, on August 15, 2005, Empson filed a second petition to terminate the Scotts' guardianship of Z.E. This petition provided the first notice to the trial court that Z.E. was Native American. It stated that Z.E.'s race was "Native American." The trial court denied the petition because the guardianship proceedings had been stayed pending the resolution of the Scotts' motion for custody.

Testimony on the Scotts' motion for custody of Z.E. commenced in January 2006. After Empson testified, the trial court adjourned the hearing in order that the submitted psychological evaluation report could be amended to include the Scotts. The trial court did not hear further testimony on the Scotts' motion for custody until February 2008.

In the meantime, Empson moved the trial court to dismiss the Scotts' motion for custody. Empson asserted that because Z.E. was Native American, the ICWA governed the proceedings. She contended that because the Scotts' motion effectively removed Z.E. from her custody and because the heightened standards under 25 USC 1912(d) and (e) regarding the removal of an Indian child from the care of a parent or Indian custodian had not been satisfied, the Scotts' motion had to be dismissed. Empson also moved for the return of Z.E. to her

---

[3] Crago consented to the Scotts' motion for custody of Z.E.

custody. She claimed that the return of Z.E. to her custody was mandated by 25 USC 1913(b), which allowed her to revoke her consent to the Scotts' guardianship of Z.E. The trial court denied the motions. It held that because the guardianship proceedings were initially consensual, the ICWA did not apply to the guardianship proceedings. The trial court further held that because the Scotts were the guardians of Z.E., the Scotts' motion for custody of Z.E., if granted, would not remove Z.E. from the custody of Empson. Therefore, according to the trial court, the ICWA did not apply to the custody proceedings.

In February 2008, after hearing further testimony on the Scotts' motion for custody, the trial court granted sole custody of Z.E. to the Scotts.

## II. STANDARD OF REVIEW

Issues involving application of the ICWA present questions of law that we review de novo. *In re Fried*, 266 Mich App 535, 538; 702 NW2d 192 (2005); *In re NEGP*, 245 Mich App 126, 130; 626 NW2d 921 (2001). Issues of statutory interpretation are also questions of law that we review de novo. *Apsey v Mem Hosp*, 477 Mich 120, 127; 730 NW2d 695 (2007). When interpreting a federal statute, our goal is to give effect to the intent of Congress. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008).

## III. ISSUES ADDRESSED ON APPEAL

On appeal, Empson argues that the trial court erred by holding that the ICWA did not apply to either the guardianship proceedings or the custody proceedings and that the trial court violated the ICWA at various times throughout the proceedings. We do not address all

of Empson's arguments on appeal because we agree with Empson that the ICWA applied to the guardianship proceedings and that the trial court violated the ICWA when it failed to return Z.E. to her custody after she revoked her consent to the Scotts' guardianship of Z.E. To reach this conclusion, we were required to address the following three issues: (1) whether the ICWA applied to the guardianship proceedings, (2) whether Empson was allowed to withdraw her consent to the Scotts' guardianship of Z.E., and (3) whether the ICWA preempted the stay mandated by MCL 722.26b(4).

### IV. THE INDIAN CHILD WELFARE ACT

In adopting the ICWA, Congress sought to establish "minimum Federal standards for the removal of Indian children from their families" in order to protect the best interests of Indian children and to promote the stability and security of Indian tribes and their families. 25 USC 1902; *In re Elliott*, 218 Mich App 196, 201; 554 NW2d 32 (1996). In a custody proceeding involving an Indian child, a state court shall apply the minimum standards articulated in the ICWA unless the applicable state law provides a higher standard of protection to the Indian child's parent or Indian custodian. 25 USC 1921 provides:

> In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this title, the State or Federal court shall apply the State or Federal standard.

The Michigan Legislature has not enacted any standards providing greater protections than the ICWA to the parent or Indian custodian of an Indian child.

Accordingly, the provisions of the ICWA apply to custody proceedings involving Indian children in Michigan.[4]

We now turn to the three issues necessary to reach our conclusion that the trial court erred by failing to return Z.E. to Empson's custody after she revoked her consent to the Scotts' guardianship of Z.E.

A. DID THE ICWA APPLY TO THE GUARDIANSHIP PROCEEDINGS?

There are two prerequisites to invoking the protections of the ICWA. *In re Johanson*, 156 Mich App 608, 612; 402 NW2d 13 (1986). First, the child must be an "Indian child" as defined by 25 USC 1903(4). *Id.* There is no dispute that Z.E. is an Indian child as the term is defined by the ICWA. Second, the custody proceeding must be "a child custody proceeding" as defined by § 1903(1). *Id.* A "child custody proceeding" is defined to include the "foster care placement" of an Indian child. 25 USC 1903(1). A "foster care placement" is defined as

> any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated. [25 USC 1903(1)(i).]

The ICWA definition of a "foster care placement" contains four requirements: (1) the action removes an Indian child from his parent or Indian custodian, (2) the Indian child is temporarily placed in a foster home, institution, or the home of a guardian or conservator, (3) the parent or Indian custodian is unable to have the child returned upon demand, and (4) the parent's rights

---

[4] Certain provisions of the ICWA are codified in the court rules. See MCR 3.980.

were not terminated. 25 USC 1903(1)(i); *JW v RJ*, 951
P2d 1206, 1212 (Alas, 1998), overruled in part on other
grounds by *Evans v McTaggert*, 88 P3d 1078 (Alas,
2004). In this case, the last three requirements were
clearly met. The trial court named the Scotts temporary
guardians of Z.E.,[5] ordered that Z.E. shall not be re-
moved from the custody of the Scotts absent the con-
sent and order of the court, and did not terminate the
parental rights of Empson. In addition, because Emp-
son had legal custody of Z.E. before the trial court
appointed the Scotts as Z.E.'s guardians, the guardian-
ship order removed Z.E. from Empson's custody. See
*JW, supra* at 1213. Accordingly, the guardianship pro-
ceedings involved a "foster care placement" of Z.E.,[6]
and, therefore, the ICWA applied to the proceedings. *In
re Johanson, supra.*

Nevertheless, the trial court ruled that the ICWA did
not apply to the guardianship proceedings because, at
their start, the proceedings were voluntary. This ruling
by the trial court misconstrues the ICWA. Voluntari-
ness of the proceedings is only a consideration for
purposes of determining whether the Indian child's
tribe is entitled to notice of a child custody proceeding.
See 25 USC 1912(a).[7] No other provision in the ICWA
limits its application to a proceeding based on the

---

[5] A temporary guardianship is limited to six months. MCL 700.5213(3).

[6] In reaching this conclusion, we note that the Scotts do not assert, and
have never asserted, that the guardianship order did not remove Z.E.
from Empson's custody.

[7] 25 USC 1912(a) provides in relevant part:

> In any involuntary proceeding in a State court, where the court
> knows or has reason to know that an Indian child is involved, the
> party seeking the foster care placement of . . . an Indian child shall
> notify the parent or Indian custodian and the Indian child's tribe,
> by registered mail with return receipt requested, of the pending
> proceedings and of their right of intervention.

voluntariness of the proceeding. The ICWA, by its terms, applies to voluntary and involuntary child custody proceedings. *Mississippi Band of Choctaw Indians v Holyfield*, 490 US 30, 50 n 25; 109 S Ct 1597; 104 L Ed 2d 29 (1989).[8] Thus, the fact that Empson consented to the Scotts' being appointed guardians of Z.E. was irrelevant in the determination whether the ICWA applied to the guardianship proceedings.

### B. WAS EMPSON ALLOWED TO WITHDRAW HER CONSENT TO THE SCOTTS' GUARDIANSHIP?

Having concluded that the ICWA applied to the guardianship proceedings, we must determine whether, pursuant to 25 USC 1913(b), Empson was allowed to withdraw her consent to the Scotts' guardianship of Z.E.

Section 1913(b) provides: "Any parent or Indian custodian may withdraw consent to a foster care placement under State law at any time and, upon such withdrawal, the child shall be returned to the parent or Indian custodian." The language of § 1913(b) appears to be unambiguous. Unambiguous statutory language is to be enforced as written. *Ayar v Foodland Distributors*, 472 Mich 713, 716; 698 NW2d 875 (2005). Thus, § 1913(b) appears to grant Empson the ability to withdraw her consent "at any time" to the trial court's appointment of the Scotts as Z.E.'s guardians and to have Z.E. returned to her custody.

However, apparently plain statutory language can be rendered ambiguous by its interaction with other statutes. *Ross v Modern Mirror & Glass Co*, 268 Mich App

---

[8] See, e.g., 25 USC 1913(c) ("In any voluntary proceeding for termination of parental rights to . . . an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination . . . .").

558, 562; 710 NW2d 59 (2005). By definition, a "foster care placement" involves a situation where the parent of an Indian child cannot have the child back on demand. 25 USC 1903(1)(i). Thus, when read together, § 1903(1)(i) and § 1913(b) appear to be in conflict: the former provides that an Indian child in a "foster care placement" cannot be returned to his parent or Indian custodian upon demand by the parent or custodian, while the latter provides that the parent or Indian custodian of the Indian child may withdraw her consent to a "foster care placement" at any time and have the child returned to her custody. A statutory provision is ambiguous if it irreconcilably conflicts with another provision. *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004). However, we will only find a statutory provision ambiguous if all other means of interpretation have been applied and found wanting. *Klida v Braman*, 278 Mich App 60, 66; 748 NW2d 244 (2008).

In resolving whether §§ 1903(1)(i) and 1913(b) irreconcilably conflict, we are guided by the following rules of statutory construction. We liberally construe remedial statutes in favor of the persons intended to be benefited. *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 77; 503 NW2d 645 (1993). The ICWA is a remedial statute designed to protect Indian children and the stability and security of Indian tribes and families. 25 USC 1902; see also *Mississippi Band of Choctaw Indians, supra* at 37 ("It does so by establishing a Federal policy that, where possible, an Indian child should remain in the Indian community.") (quotation marks and citation omitted). Accordingly, we are to construe the ICWA in favor of Empson, as she is the intended beneficiary of the ICWA. In addition, we must avoid a construction that would render any part of the statute surplusage or nugatory. *In re Complaint of McLeodUSA*

*Telecom Services, Inc*, 277 Mich App 602, 611; 751 NW2d 508 (2008). A statutory provision is rendered nugatory when an interpretation fails to give the provision meaning or effect. *Apsey, supra* at 131. Further, we must consider the placement of the apparent conflicting provisions within the act and the purpose of each provision. *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr*, 268 Mich App 484, 489; 708 NW2d 453 (2005). Finally, we must give the statutory language a reasonable construction that best accomplishes the purpose of the statute. *King v Reed*, 278 Mich App 504, 515; 751 NW2d 525 (2008).

In applying these principles, we note that § 1903 is the definitional section of the ICWA. Because the ICWA only applies if the proceeding is a "child custody proceeding" as defined by § 1903(1), *In re Johanson, supra*, the purpose of § 1903(1) is to define the proceedings to which the ICWA applies. In contrast, § 1913 identifies the rights provided to the parent or Indian custodian of an Indian child when the parent or custodian voluntarily consents to a foster care placement of the child or the parent agrees to the termination of parental rights. Relevant to our consideration, we note that, in addition to § 1913(b), which allows the parent or Indian custodian to withdraw consent to a foster care placement, §1913(c) allows the parent, for any reason, to withdraw consent to the termination of parental rights to, or adoptive placement of, the Indian child at any time before the entry of a final decree of termination or adoption and, pursuant to § 1913(d), after the entry of a final decree of adoption, the parent may withdraw consent on the basis that the consent was obtained through fraud or duress. Thus, the question is whether a definitional provision can render nugatory a provision setting forth a party's substantive rights, because if we were to conclude that § 1903(1)(i) prevents a parent or

Indian custodian from withdrawing consent to a foster care placement of an Indian child, § 1913 would be rendered nugatory. It would have no effect.

As stated above, we must avoid a construction of the ICWA that renders any portion of it surplusage or nugatory. Accordingly, we conclude that § 1903(1)(i) is only applicable when determining whether the ICWA applies to a custody proceeding. It is not applicable when determining the rights of a parent or Indian custodian after the parent or custodian has voluntarily consented to a "foster care placement" of an Indian child. Rather, it is § 1913 that delineates the rights of the parent or Indian custodian who has consented to a "foster care placement" of an Indian child. In other words, if a parent or Indian custodian of an Indian child has consented to a "foster care placement," as the term is defined in § 1903(1)(i), the parent or custodian may "at any time" thereafter withdraw consent to the placement under § 1913(b) and have the Indian child returned to his or her custody. This construction gives effect to both provisions and accomplishes Congress's goal in adopting the ICWA of protecting Indian families. Thus, Empson, even though she voluntarily consented to the trial court's appointment of the Scotts as Z.E.'s guardians, which constituted a "foster care placement" under § 1903(1)(i), had the right to withdraw her consent to the guardianship and to have Z.E. returned to her custody.

### C. DID THE ICWA PREEMPT THE STAY MANDATED BY MCL 722.26b(4)?

Empson withdrew her consent to the Scotts' guardianship of Z.E. on December 1, 2004, and August 15,

2005.[9] However, because of the stay imposed by MCL 722.26b(4) in the guardianship proceedings, the trial court never heard Empson's petitions, much less did it return Z.E. to Empson's custody. MCL 722.26b(4) provides in pertinent part:

> Upon the filing of a child custody action brought by a child's guardian or limited guardian, guardianship proceedings concerning that child in the probate court are stayed until disposition of the child custody action. A probate court order concerning the guardianship of the child continues in force until superseded by a circuit court order.

The final issue in reaching our conclusion that the trial court erred by failing to return Z.E. to Empson's custody after Empson withdrew her consent to the Scotts' guardianship of Z.E. is whether the ICWA preempted the stay mandated by MCL 722.26b(4). Federal law preempts a state law if the state law stands as an obstacle to the accomplishment of the full objectives of Congress. *Ammex, Inc v Dep't of Treasury*, 272 Mich App 486, 497; 726 NW2d 755 (2006).

The ICWA provides minimum standards for the removal of Indian children from their families, 25 USC 1902, and a state court must apply those standards unless state law provides a higher standard of protection to the Indian child's parent or Indian custodian, 25 USC 1921. Included within the ICWA's minimum protections for an Indian child's parent is the parent's right to "withdraw consent to a foster care placement under State law *at any time.*" 25 USC 1913(b) (emphasis added). Thus, the stay mandated by MCL 722.26b(4) infringed on the minimum protections Empson was

---

[9] We limit our analysis to whether Empson was entitled to have Z.E. returned to her custody after the filing of the August 15, 2005, petition. Before this petition, no filings indicated that Z.E. was Native American.

afforded under § 1913(b) because once the Scotts moved for sole custody of Z.E. and the guardianship proceedings were stayed, Empson no longer had the ability to withdraw her consent to the Scotts' guardianship of Z.E. and to have Z.E. returned to her custody. In other words, the stay prevented Empson from withdrawing her consent to the guardianship "at any time." Because the stay mandated by MCL 722.26b(4) stood as an obstacle to providing Empson the minimum protections she was afforded by Congress, the ICWA preempted the stay imposed in the guardianship proceedings. Accordingly, upon receiving Empson's August 15, 2005, petition to terminate the Scotts' guardianship of Z.E., the trial court should have lifted the stay and addressed the merits of the petition seeking the return of Z.E. to Empson's custody pursuant to 25 USC 1913(b).

### V. CONCLUSION

The ICWA applied to the guardianship proceedings. Consequently, Empson retained the right to revoke her consent to the Scotts' guardianship of Z.E. at any time, and, on August 15, 2005, Empson revoked her consent. Because the ICWA preempted the stay imposed by MCL 722.26b(4) in the guardianship proceedings, the trial court should have terminated the guardianship order and returned Z.E. to Empson's custody as required by 25 USC 1913(b). We therefore vacate the trial court's February 19, 2008, order granting custody of Z.E. to the Scotts[10] and remand this case for the entry of an order

---

[10] The Scotts only had standing to seek custody of Z.E. because they were his guardians. See MCL 722.26b(1); *Kater v Brausen*, 241 Mich App 606, 610; 617 NW2d 40 (2000). Because the Scotts' guardianship of Z.E. should have been terminated after Empson withdrew her consent to the guardianship in August 2005, the Scotts thereafter had no standing to

terminating the Scotts' guardianship of Z.E. On remand, within a reasonable time, the trial court shall also effectuate the return of Z.E. to Empson.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

seek custody of Z.E. See MCL 722.26c (setting forth when a third party may bring an action for custody of a child).