*1067
 
 ORFINGER, C.J.
 

 The father, G.L., appeals the termination of his parental rights to his child, T.M.L. He contends that the notice requirements of the Indian Child Welfare Act of 1978 (“ICWA”), 25 U.S.C.A. §§ 1901-1963 (2010), were not met. We agree, reverse the judgment, and remand with directions.
 

 As a result of her parents’ drug history, domestic violence and related criminal history, T.M.L. was sheltered and placed in foster care. The Department of Children and Families (“DCF”) filed an expedited petition to terminate the mother’s and father’s parental rights. In response, the mother filed a notice with the court alleging that she and the child have Indian ancestry and, as a consequence, the ICWA was applicable. The court minutes reflect that the trial court and the parties were aware of the need to satisfy the ICWA’s requirements based on the mother’s notice. However, the trial court made no determination as to applicability of the ICWA. The mother and father appeared at the termination hearing, and neither the parents, DCF nor the court raised the issue of the ICWA’s applicability. The court terminated parental rights. While the mother did not appeal, the father claims that the trial court’s failure to comply with the ICWA requires reversal.
 

 At the outset, we reject DCF’s assertion that this issue may not be addressed on appeal as it was not raised by the father below. Section 1912 of the ICWA provides that “[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child’s tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.” Thus, under the ICWA, DCF has the burden of notifying the appropriate Indian tribes so that the trial court has the information necessary to determine whether the ICWA is applicable.
 

 We find that the provisions of the federal ICWA allowing post-judgment challenges to involuntary termination proceedings preempt the traditional rules regarding preservation of error.
 
 [1]
 
 The notice requirements enumerated in the ICWA are mandatory and preempt state law, and the failure to follow the ICWA may be raised for the first time on appeal.
 
 See
 
 25 U.S.C.A. § 1914 (stating that Indian child, parent of child, or tribe may petition any court of competent jurisdiction to set aside involuntary termination for failure to comply with ICWA);
 
 see also In re Antoinette S.,
 
 104 Cal.App.4th 1401, 129 Cal.Rptr.2d 15, 21 (2002) (finding that father’s failure to raise issue of applicability of ICWA notice requirement did not waive issue on appeal of termination of parental rights because notice requirement is intended, in part, to protect interests of Indian tribes, and therefore, cannot be waived by parents’ failure to raise it);
 
 People in Interest of J.O.,
 
 170 P.3d 840, 842 (Colo.Ct.App.2007) (stating that “notice requirements of
 
 *1068
 
 the ICWA serve the interests of the Indian tribes and, therefore, cannot be waived by a parent and may be raised for the first time on appeal”);
 
 In re
 
 302 S.W.3d 896, 899 (Tex.App.2009) (finding that ICWA protections are mandatory and preempt state preservation of error law).
 
 But see In Interest of J.D.B.,
 
 584 N.W.2d 577, 581 (Iowa Ct.App.1998) (“[W]e find nothing in ICWA which expressly or impliedly preempts a state’s error preservation rules.”).
 

 Congress enacted the ICWA for the purpose of protecting the best interests of Indian children and to promote the stability and security of Indian tribes and families.
 
 Miss. Band of Choctaw Indians v. Holyfield,
 
 490 U.S. 30, 32, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). The ICWA applies when the state seeks to place an Indian child
 
 [2]
 
 in foster care or terminate parental rights.
 
 See
 
 25 U.S.C.A. §§ 1911, 1912. Under those circumstances, whenever the court has reason to know that the child may be an Indian child, DCF, as the party seeking placement or termination, must provide notice to the child’s tribe, or the Bureau of Indian Affairs (“BIA”) if the tribe cannot be identified or located, with return receipt requested, of the pending proceedings and of the tribe’s right to intervene. 25 U.S.C.A. § 1912(a). The tribe must receive notice because “the best source of information on whether a particular child is Indian is the tribe itself’ and “tribal verification is preferred.”
 
 Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings,
 
 44 Fed.Reg. 67,584, 67,586 (B.1 Commentary)
 
 [3]
 
 (Nov. 26, 1979) (“the Guidelines”). The record before us contains no proof of notice to the tribes, and it is undisputed that the court did not determine whether T.M.L. is an Indian child.
 

 Here, the trial court had reason to believe that T.M.L. is an Indian child.
 
 [4]
 

 See BIA Guidelines,
 
 44 Fed. Reg. at 67,-586 (providing that court may have “reason to believe” child is an Indian child if (1) any party to the case, Indian tribe, Indian organization, or public or private agency informs court that child is Indian; (2) any public or state-licensed agency involved in child protection services or family support has discovered information that suggests child is Indian; or (3) officer of court involved in proceeding has knowledge that child may be Indian). Once the trial court had reason to believe that
 
 *1069
 
 T.M.L. is an Indian child, the notice provisions of the ICWA were triggered and were mandatory.
 
 See BIA Guidelines,
 
 44 Fed. Reg. at 67,586 (providing that when state court has reason to believe child involved in child custody proceeding is an Indian, court shall seek verification of child’s status from either BIA or child’s tribe);
 
 In re Antoinette S.,
 
 129 Cal.Rptr.2d at 21 (indicating that “minimal showing” required trigger notice under ICWA is merely evidence suggesting minor may be an Indian child within purview of Act);
 
 B.H. v. People in Interest of X.H.,
 
 138 P.3d 299, 304 (Colo.2006) (stating that sufficiently reliable information of any criteria on which membership might be based triggers ICWA’s notice provisions);
 
 J.O.,
 
 170 P.3d at 843 (indicating that parent’s possible Apache heritage required notice to all known Apache tribes);
 
 In re Dependency of T.L.G.,
 
 126 Wash.App. 181, 108 P.3d 156, 158 (2005) (requiring notice when child “possibly” an Indian child).
 

 The trial court’s application of the ICWA is a question of law, which we review de novo.
 
 See Seminole Tribe of Fla. v. Dep’t of Children & Families,
 
 959 So.2d 761, 765 (Fla. 4th DCA 2007);
 
 L.G. v. State, Dep’t of Health & Soc. Servs.,
 
 14 P.3d 946, 950 (Alaska 2000);
 
 Empson-Laviolette v. Crago,
 
 280 Mich.App. 620, 760 N.W.2d 793, 797 (2008). In light of the ICWA’s explicit language, we cannot view the trial court’s failure to comply with the ICWA as harmless.
 
 See
 
 25 U.S.C.A. § 1914 (stating that violation of ICWA notice provisions may be cause for invalidating termination of parental rights).
 

 As the Second District recognized in In re T.D., 890 So.2d 473, 474 (Fla. 2d DCA 2004), it is important to determine early in the proceedings whether the ICWA might apply, and to follow the proper procedures to ensure that the notice requirements of the ICWA are met:
 

 This situation puts into sharp focus the need for early investigation to determine whether American Indian children are involved in child custody or TPR proceedings. To insure compliance with the ICWA and to avoid the expenditure of state resources when the child’s Indi-an tribe should and wants to exercise its jurisdiction, we suggest that the Department, at the initiation of proceedings, or the trial court when it first is involved, inquire of the parents or relatives to determine the applicability of the ICWA. If the ICWA were presumptively applicable to this case, and had its procedures been properly followed, the great expenditure of scarce judicial and state resources that this case represents could have been avoided.
 

 For these reasons, we reverse the termination order and remand this case to the trial court so that proper notice may be provided. On remand, the trial court shall conduct a hearing to determine whether T.M.L. is an Indian child under the ICWA. If, after notice and hearing, the trial court determines that T.M.L. is an Indian child, the trial court shall conduct a new trial applying the requirements and standards of the ICWA. If, after notice and a hearing, the trial court determines that T.M.L. is not an Indian child, the trial court may re-enter the termination order terminating the rights of the parents.
 
 See S.B. v. Dep’t of Health & Rehab. Servs.,
 
 679 So.2d 57, 57 (Fla. 4th DCA 1996) (reversing order terminating parental rights but stating that on remand, upon resolving notice issue, court may re-issue termination order).
 

 REVERSED AND REMANDED.
 

 TORPY and LAWSON, JJ., concur.
 

 [1]
 

 . Federal law preempts state law when: (1) Congress has expressly preempted state law, (2) Congress has installed a comprehensive regulatory scheme in the area, removing the entire field from the state realm, or (3) state law directly conflicts with the force or purpose of federal law.
 
 See Cipollone v. Liggett Grp., Inc.,
 
 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Congress has not expressly stated that it was preempting state law concerning child custody proceedings by enacting the ICWA or that it intended for the ICWA to occupy the area of child custody proceedings completely.
 
 In re J.J.C.,
 
 302 S.W.3d 896, 899 (Tex.App.2009);
 
 In re W.D.H.,
 
 43 S.W.3d 30, 36 (Tex.App.2001).
 

 [2]
 

 . Ail Indian child is defined by the ICWA as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.” 25 U.S.C.A. § 1903(4). The ICWA, however, does not define what constitutes being a "member” or "being eligible for membership” since each tribe has its own criteria for determining tribe membership.
 
 See In Interest of A.G.-G.,
 
 899 P.2d 319, 321 (Colo.App.Ct.1995).
 

 [3]
 

 . The BIA created guidelines for state courts to use in Indian child custody proceedings to assist with the interpretation of the ICWA.
 
 See BIA Guidelines,
 
 44 Fed. Reg. 67,584. Although the Guidelines are not binding, they have been considered persuasive by state courts.
 
 See, e.g., B.H. v. People in Interest of X.H.,
 
 138 P.3d 299, 302 n. 2 (Colo.2006);
 
 In re N.N.E.,
 
 752 N.W.2d 1, 7 (Iowa 2008);
 
 In re H.D.,
 
 11 Kan.App.2d 531, 729 P.2d 1234, 1238 (1986);
 
 In re Welfare of Child of: T.T.B. & G.W.,
 
 724 N.W.2d 300, 305 (Minn.2006);
 
 In re R.R., Jr.,
 
 294 S.W.3d 213, 218 (Tex.App.2009).
 

 [4]
 

 . The mother’s notice stated that T.M.L.’s maternal grandfather was half Navajo and maternal grandmother was three-fourths Cherokee. Although "[t]he party asserting the applicability of ICWA has the burden to produce the necessary evidence for the trial court to determine if the child is an ‘Indian child,’ "
 
 In Interest of A.G.-G.,
 
 899 P.2d at 322, the threshold information necessary to trigger the notice requirement "was clearly not intended to be high.”
 
 B.H.,
 
 138 P.3d at 303.