Melissa PETERSON, Relator,

v.

WASHINGTON COUNTY HOUSING
AND REDEVELOPMENT AU-
THORITY, Respondent.

No. A10–2053.

Court of Appeals of Minnesota.

Aug. 15, 2011.

Michael W. Hagedorn, Southern Minnesota Regional Legal Services, St. Paul, MN, for relator.

Kathleen M. Brennan, Joelle M. Lester, McGrann Shea Carnival Straughn & Lamb, Chartered, Minneapolis, MN, for respondent.

Considered and decided by ROSS, Presiding Judge; STONEBURNER, Judge; and STAUBER, Judge.

## OPINION

ROSS, Judge.

After Section 8 participant Melissa Peterson failed to provide the Washington County Housing and Redevelopment Authority timely change-of-income information required by local rules, the authority's hearing officer decided to terminate her housing assistance. On appeal by writ of certiorari, Peterson challenges the hearing officer's decision, arguing that the authority's rule requiring participants to report changes in income within five days is not allowed by federal law and that the hearing officer failed to consider relevant facts, make required findings, and base those findings on sufficient evidence. Because we hold that federal law authorizes the local authority to impose the rule, and that the hearing officer was not required to consider mitigating personal circumstances to excuse Peterson's reporting failure, and that the evidence supports the decision, we affirm.

## FACTS

Relator Melissa Peterson, an unemployed single mother of four children, was receiving rent subsidies under the Department of Housing and Urban Development (HUD) Section 8 Housing Choice Voucher Program for eight years when the events giving rise to the conflict in this case occurred. The voucher program provides qualifying persons with funds to subsidize their monthly rent, 42 U.S.C. § 1437f(o) (2006); 24 C.F.R. § 982.1(a) (2010), and is administered in Washington County by respondent Washington County Housing and Redevelopment Authority (the HRA). Each program participant chooses a rental unit, and if the HRA approves of it, it contracts with the landlord to make the subsidy payments on the participant's behalf. 24 C.F.R. § 982.1(a)(2).

When Peterson completed her annual program-recertification process in June 2010, she signed a copy of the HRA's "family obligations" policy and watched a film explaining the policies. By signing, Peterson acknowledged obligations, including one that states, "I understand that I must report all changes in my household income in writing to the [HRA] within five (5) days of the change," and another that states, "I understand that false statements or information are grounds for termination of housing assistance."

That same month Peterson applied for benefits for a new apartment. The next month, on July 8, 2010, she transmitted a written statement by facsimile to the HRA representing that she had no income. The form containing that statement also declared, "I understand that failure to report income may result in termination of my rental assistance and/or repayment to the Washington County HRA of any rent overpaid on my behalf." Peterson moved into the new apartment the end of July.

But on August 4, the HRA received a packet from Peterson's apartment manager containing an income certification form that Peterson completed indicating that she received $7,764 yearly in public-assistance income. When HRA employee Ann Hoechst telephoned Peterson to inform her that she had received a copy of the lease, Peterson did not mention the public-assistance income. Hoechst confirmed with Washington County Social Services that Peterson had received $375 on July 14 and $647 on July 30 in Minnesota Family Investment Program (MFIP) grants. The HRA then notified Peterson that it was terminating her housing assistance because she failed to report this income.

Peterson requested and received an informal hearing. She alleged that she had told Hoechst that she was planning to apply for MFIP. She also said that she

telephoned Hoechst and left a voicemail message informing her that she received MFIP payments. But she could not recall the date of either alleged communication. She maintained that she "would never not report [her] income" and that she "always reported anything little to Ann." She also told the hearing officer of her contemporaneous challenging personal circumstances: she had flood damage and had been dealing with her insurance company; she was attending school; she cared for an ailing aunt; she visited her dying uncle; she addressed her son's behavioral issues, including attending weekly meetings with his probation officer; she registered her twins in a preschool program; she registered her oldest son at a new school; and she dealt with her sister's attempted suicide.

The hearing officer concluded that Peterson failed to report income in writing within five days of receiving it and decided that her Section 8 housing assistance should be terminated. Peterson appeals that decision by writ of certiorari.

### ISSUES

I. Does failure to satisfy a local authority's five-day change-of-income reporting rule support the termination of Section 8 housing benefits?

II. Was the HRA hearing officer's decision to terminate benefits supported by substantial evidence, described by required findings, and decided on grounds that are not arbitrary and capricious?

### ANALYSIS

■ Peterson appeals from the HRA's decision to terminate her Section 8 housing benefits. We will uphold a housing authority's quasi-judicial decision to terminate a participant's housing benefits unless we conclude that the authority's decision is "unconstitutional, outside the agency's ju-

risdiction, procedurally defective, based on an erroneous legal theory, unsupported by substantial evidence, or arbitrary and capricious." *Carter v. Olmsted Cnty. Hous. & Redev. Auth.*, 574 N.W.2d 725, 729 (Minn.App.1998). Peterson challenges the decision on two primary grounds. She first contests the HRA's five-day change-of-income reporting rule. She next contests the rationale of the hearing officer's decision irrespective of the reporting rule.

### I

■ We first address Peterson's contention that the HRA erroneously relied on its five-day change-of-income reporting rule. Peterson claims that the HRA was not authorized by federal law to impose the rule. We review the HRA's construction of statutes and regulations de novo. *Houston v. Int'l Data Transfer Corp.*, 645 N.W.2d 144, 149 (Minn.2002) (statutes); *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn.2002) (regulations). Our reading of the applicable HUD statutes and regulations does not support Peterson's challenge to the HRA rule's validity.

Federal law authorizes local government agencies to administer the HUD Section 8 voucher program. 42 U.S.C. §§ 1437f, 3535(d) (2006); 24 C.F.R. § 982.1(a)(1). In Minnesota, the local government agencies are the county or municipal housing authorities, like the HRA here. *See* Minn. Stat. § 469.001–.047 (2010). These local housing authorities must review a program recipient's household income at least annually. 42 U.S.C. § 1437f(*o*)(5)(B) (2006). They must also "adopt policies prescribing when and under what conditions the family must report a change in family income or composition." 24 C.F.R. § 982.516(c) (2010). Recipients must "supply any information that the [local housing authority] or HUD determines is necessary in the ad-

ministration of the program," 24 C.F.R. § 982.551(b)(1), including information for use in its "reexamination of family income," 24 C.F.R. § 982.551(b)(2). This "information" includes any documentation the local housing authority requests, 24 C.F.R. § 982.551(b)(1), and it must be "true and complete." 24 C.F.R. § 982.551(b)(4).

Consistent with these provisions, the HRA adopted a screening and evaluation policy for reviewing household income, requiring program participants to report any increase in household income, in writing, within five days of the change. Contrary to Peterson's arguments, this local policy follows the federal authorization. It meets the objective of 24 C.F.R. § 982.516(c), which requires local agencies to adopt policies prescribing "when and under what conditions" program recipients must report, and it comports with 24 C.F.R. § 982.551(b)(2), which includes requested documentation as information to be provided by recipients.

We reject Peterson's contention that local housing authorities are not authorized to impose written reporting deadlines like the HRA's five-day deadline. The federal scheme does not expressly prohibit local authorities from including deadlines with their reporting requirements. To the contrary, it implicitly invites local authorities to impose deadlines. Peterson's counsel acknowledged at oral argument that the federal statutes and regulations do not themselves specify any deadline for the change-in-income reporting that they require. By unrestrictively directing states to designate local agencies to administer the program, and particularly to establish and enforce income-reporting requirements, federal law authorizes local housing authorities to impose and apply written reporting deadlines.

Peterson's related argument also fails. She contends that, even if federal law allows the HRA to impose the five-day deadline, it does not allow the HRA to enforce the deadline by terminating her benefits. The plain language of the federal regulations belies the contention. It provides that the local housing authority "may at any time ... terminate program assistance for a participant" if the participant violates any program obligation. 24 C.F.R. § 982.552(c)(1)(i) (2010). Reporting income changes as directed by the local administrative authority is a program obligation. Peterson's own written acknowledgment made during her recertification also belies the contention: "I understand that failure to report income may result in termination of my rental assistance."

Peterson's challenge to the existence and application of the HRA's five-day change-of-income reporting rule fails. We turn to her challenges to the hearing officer's analysis in applying the rule to terminate her benefits.

## II

Peterson argues that the hearing officer's decision to terminate her assistance is not supported by required findings, based on substantial evidence, or founded on legitimate rationale. We review each of these questions. *Carter*, 574 N.W.2d at 729.

### Required Findings

■■ Peterson questions the sufficiency of the hearing officer's findings. A hearing officer's determinations must be supported by sufficient findings to permit meaningful appellate review:

To be legally sufficient, the [hearing officer] must make an express credibility determination, must set forth the inconsistencies in the record which have led to the rejection of the [relator's] testimo-

ny, must demonstrate that all relevant evidence was considered and evaluated, and must detail the reasons for discrediting pertinent testimony.

*Id.* (quotation omitted). Peterson argues that the hearing officer failed to make required findings about her credibility. But findings regarding Peterson's credibility were unnecessary to the hearing officer's determination. The hearing highlighted an inconsistency in the evidence about Peterson's claim that she had orally reported the additions to her income to HRA staff. But that factual dispute was immaterial because the hearing officer found "more importantly" Peterson's failure to have ever reported the income *in writing.*

■ Peterson similarly argues that the hearing officer failed to make findings demonstrating that she considered the alleged evidence that Peterson "always reported everything to the HRA." But this alleged evidence is not inconsistent with the hearing officer's conclusion that Peterson failed to make her report in writing.

### Substantial Evidence

■ Peterson argues also that the evidence does not support the hearing officer's factual finding that she failed to notify the HRA of her income change. The hearing officer's decision must be supported by "substantial evidence, defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 730 (quotations omitted). There is no dispute that Peterson never provided timely written notice of her change in income, so this contention rests on the erroneous premise that an oral report satisfies the HRA's reporting requirements. The contention fails for that reason. And we observe that the hearing officer received sufficient evidence—in the form of direct testimony from Hoechst—

that Peterson never informed Hoechst of the income even orally. A reasonable mind could accept that testimony to find that Peterson never reported the income to the HRA.

### Arbitrary and Capricious

■ We next address Peterson's charge that the HRA's decision to terminate her benefits is arbitrary and capricious because the hearing officer failed to consider relevant mitigating facts. These facts include her time spent dealing with moving, her children, her ailing aunt and uncle, and the potential negative effect that benefits termination would have on her single-parent, four-child household. The controlling federal law does not require hearing officers to consider mitigating facts like these. The regulations state instead that a local housing authority terminating a participant's assistance *"may* consider" mitigating factors such as "the effects of denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. § 982.552(c)(2)(i) (2010) (emphasis added).

Our unpublished opinions have inconsistently interpreted this provision. In some cases, we have held that a housing authority must consider mitigating circumstances because they are an important aspect of the problem. *See, e.g., Hicks v. Dakota Cnty. Comm. Dev. Agency,* No. A06–1302, 2007 WL 2416872, at *4 (Minn.App. Aug. 28, 2007) (reversing termination decision because hearing officer failed to consider the nature of the violation, the degree of the relator's culpability, and the effects of termination on her children), *review denied* (Minn. Nov. 13, 2007); *Hassan v. Dakota Cnty. Comm. Dev. Agency,* No. A08–0373, 2009 WL 437775, at *3 (Minn. App. Feb. 24, 2009) (reversing a local housing authority's decision to terminate benefits because it failed to consider the miti-

gating factor of the relator's inability to speak English and the effect of its decision on the relator's other family members); *Pittman v. Dakota Cnty. Comm. Dev. Agency*, No. A07–2063, 2009 WL 112948, at *4 (Minn.App. Jan. 20, 2009) (reversing a termination decision for failing to consider mitigating evidence that relator "had numerous children and that she and her children would be homeless if she lost her housing assistance[,] ... that [she] was pregnant at the time of the hearing[,] ... that one of her children suffers from profound disabilities and cannot walk[,] ... [and] that she was a victim of domestic violence").

In other cases, we expressly held that a housing authority is not required to consider mitigating evidence because the plain language of the regulation gives local housing authorities the discretion whether to consider them. *See, e.g., Jones v. Dakota Cnty. Comm. Dev. Agency*, No. A08–1603, 2009 WL 2151158, at *6 (Minn.App. Jul. 21, 2009) (affirming a termination decision notwithstanding hearing officer's failure to consider the impact of termination on the family after holding that the hearing officer "was not required to do so under the regulations"); *Rawlings v. Washington Cnty. Hous. & Redev. Auth.*, No. A06–1257, 2007 WL 2034356, at *5 (Minn.App. July 17, 2007) (affirming a termination decision after noting that "may is permissive, not mandatory" and stating "[w]e cannot conclude that a [housing authority] acts arbitrarily and capriciously when it fails to consider factors which it may choose to, but is not required to, consider" (quotations omitted)).

No published Minnesota case has answered the question, but we are persuaded by our unpublished opinions that give force to the plain language of the regulation. We hold that a hearing officer is not required to consider mitigating factors, like the hardship issues that Peterson alleges, when deciding whether a relator's violation of a reporting rule is a terminable offense. While the hearing officer *may* consider mitigating factors, the regulations do not require it, allowing for strict application of a local reporting rule like the one Peterson violated. In other words, a hearing officer's failure to consider mitigating factors does not, by itself, demonstrate arbitrary and capricious reasoning in the form of "fail[ing] to consider an important aspect of the issue." *See Rostamkhani v. City of St. Paul*, 645 N.W.2d 479, 484 (Minn.App.2002). Because a hearing officer is not required to take account of mitigating factors, the hearing officer's failure in this case to consider whether Peterson's personal distractions and challenges influenced her failure to report her income does not render the decision infirm.

## DECISION

Federal law authorizes the HRA to create and enforce its policy requiring Section 8 program participants to provide the HRA with written notice of a change in income within five days of the change. The hearing officer's conclusion that Peterson violated the HRA's income-reporting policy is amply supported by the evidence and rationally explained in the hearing officer's analysis. Federal law also authorizes the hearing officer's decision to terminate Peterson's benefits, and the decision is not rendered arbitrary and capricious by the hearing officer's failure to consider the mitigating factors that the regulations allow but do not require her to consider.

**Affirmed.**