# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL BLIZMAN,

        Petitioner-Appellee,

v

MICHIGAN STATE HOUSING
DEVELOPMENT AUTHORITY,

        Respondent-Appellant.

UNPUBLISHED
July 18, 2017

No. 330184; 334484
Wayne Circuit Court
LC No. 15-012182-AA

Before: MURPHY, P.J., and TALBOT, C.J., and O'CONNELL, J.

PER CURIAM.

This matter concerns respondent Michigan State Housing Development Authority (MSHDA)'s decision to terminate petitioner Michael Blizman's housing voucher. Blizman appealed to the trial court. The trial court entered an order staying the termination until it could reach a final decision on the merits. In Docket No. 330184, we granted MSHDA leave to appeal.[1] While the appeal was pending, the trial court reversed MSHDA's decision on the merits. In Docket No. 334484, we granted MSHDA leave to appeal and also consolidated the appeals.[2] We now vacate the trial court's order and remand to the MSHDA for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Michael was born with cerebral palsy. He testified that as a result, he cannot walk, has weakness on the left side of his body, has slight mental deficits, has slight hearing deficits, requires assistance with day-to-day activities, and relies on social security benefits for income.

The MSHDA accepts and administers federal funding from the United States Department of Housing and Urban Development (HUD) in accordance with federal law to subsidize rent for

---

[1] *Blizman v Mich State Housing Dev Auth*, unpublished order of the Court of Appeals, entered January 8, 2016 (Docket No. 330184).

[2] *Blizman v Mich State Housing Dev Auth*, unpublished order of the Court of Appeals, entered September 30, 2016 (Docket No. 334484).

-1-

individuals with low income, which includes persons with disabilities. 42 USC 1437f(o); 24 CFR 982.1(a); MCL 125.1422(c). Regulations further require the MSHDA to "adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements." 24 CFR 982.54.[3] Michael's mother received a housing choice voucher from this funding. Michael testified that his mother died in 2003. When she died, her voucher passed to Michael.

Federal regulations state that a voucher participant must meet several obligations to receive and maintain a voucher. See 24 CFR 982.551. A live-in-aide may live with a voucher holder if approved by the MSHDA. See 24 CFR 982.551(h)(4). Angela Blizman, Michael's sister, testified that paperwork filed with MSHDA listed her as Michael's live-in aid. However, Angela was not listed as Michael's live-in aid after 2004. Nonetheless, she testified that she lived in Michael's home, at times, and provided Michael services until 2012. Michael testified that his girlfriend, Shannon Sloan, then took over some of Angela's tasks, and ultimately moved into his home in 2014.

In 2015, an anonymous individual called MSHDA's fraud hotline and reported that persons were improperly living with Michael and paying rent. If the participant fails to meet program requirements and obligations, the MSHDA can terminate the voucher. See 24 CFR 982.552. MSHDA investigated the claim, determined that Michael no longer qualified for a voucher, and notified Michael that it would terminate his voucher effective April 30, 2015.

Michael requested a hearing to address MSHDA's decision. Michael then requested a reasonable accommodation, seeking a live-in aide to provide his personal care.

The parties had a hearing before an administrative law judge (ALJ). The ALJ found that Sloan was a member of Michael's household and that Angela, Michael's friend Brian Douglas, and Michael's cousin, Michelle Blizman, reported Michael's address as their own. Therefore, the ALJ concluded that Michael violated federal program regulations because he failed to report the persons living in his home and he failed "to report all income that came to the assisted unit." Further, the ALJ concluded that Michael's request for a reasonable accommodation was irrelevant and untimely. Thus, the ALJ recommended that MSHDA affirm the termination of Michael's voucher. MSHDA entered a final decision and order terminating Michael's voucher, citing the ALJ's conclusions that Michael had unauthorized persons residing in his home and failed to accurately report his household income.[4]

---

[3] MSHDA directs us to find its plan at MSHDA, *HCV Administrative Plan* <https://www.michigan.gov/mshda/0,4641,7-141--269826--,00.html> (accessed July 7, 2017) [hereinafter Plan]. This site contains only a 2017 version that was not in effect when the MSHDA entered its final order terminating Michael's voucher. The record provides copies of older plans. No older plan in the record reviewed by this Court contains any relevant difference.

[4] Although the MSHDA listed other reasons for termination on its program termination notice, it did not list any other bases for termination in its final decision and order.

Michael appealed to the trial court and moved for a stay of the termination of his voucher. The trial court granted Michael's motion for a stay, ordered MSHDA to retroactively reinstate Michael's voucher, and ordered MSHDA to reinstate his voucher until the trial court could make a final ruling.

When the trial court made a final ruling,[5] it determined that the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, governed Michael's appeal and that the trial court had jurisdiction to resolve his appeal. The trial court concluded that the ALJ's findings were not supported by competent, material, and substantial evidence and that the ALJ abused its discretion by failing to consider mitigating factors, such as Michael's disability, for Michael's alleged violations of the voucher program. Therefore, the trial court entered an order reversing MSHDA's final decision and order terminating Michael's voucher.

## II. TRIAL COURT JURISDICTION

MSHDA argues that the trial court lacked subject-matter jurisdiction to hear Michael's appeal because the appeal was governed by the Revised Judicature Act (RJA), MCL 600.101 *et seq.*, and Michael did not timely file an appeal under the act. We disagree.

A party may challenge a court's subject-matter jurisdiction at any time. *Smith v Smith*, 218 Mich App 727, 729-730; 555 NW2d 271 (1996). We review a court's conclusion that it has subject-matter jurisdiction de novo. *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000). Likewise, we review de novo matters of statutory interpretation and the interpretation of Michigan Court Rules. *Bint v Doe*, 274 Mich App 232, 234; 732 NW2d 156 (2007).

Generally, one of three statutory schemes governs judicial review of an administrative decision: (1) "the review process prescribed in the statute applicable to the particular agency," (2) the RJA, MCL 600.631, and corresponding Michigan Court Rules, or (3) the APA. *Preserve The Dunes, Inc v Dep't of Environmental Quality*, 471 Mich 508, 519; 684 NW2d 847 (2004). The RJA's scheme has a jurisdictional time limit: an appellant has 21 days to challenge an agency's decision. See MCL 600.631; MCR 7.123(B)(1); MCR 7.104(A)(1). In this case, Michael filed his claim of appeal in the trial court 23 days after MSHDA's final decision. Therefore, if the RJA applies, the trial court lacked jurisdiction to hear Michael's claim of appeal. But if the APA applies, Michael had 60 days to file his appeal, and MSHDA's jurisdictional challenge fails. See MCL 24.303(1); MCR 7.119(B)(1).

We conclude that the APA applies. The APA governs judicial review of "decisions and orders in contested cases." *Northwestern Nat'l Cas Co v Ins Comm'r*, 231 Mich App 483, 489-490; 586 NW2d 563 (1998). A "[c]ontested case" is "a proceeding . . . in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an

---

[5] Because the trial court resolved Michael's appeal on the merits, the MSHDA's argument that the trial court abused its discretion in granting Michael's motion for a stay is moot. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). Therefore, we do not address MSHDA's argument. *Id*.

agency after an opportunity for an evidentiary hearing." MCL 24.203(3). Thus, for the APA's rules of appellate review to apply, an evidentiary hearing must have been required by law. See *McBride v Pontiac Sch Dist (On Remand)*, 218 Mich App 113, 121-122; 553 NW2d 646 (1996).

Federal HUD regulations require an evidentiary hearing in this matter. 24 CFR 982.555(a)(1)(iv) requires a public housing agency (PHA) such as the MSHDA to provide a family[6] with an informal hearing following a decision to terminate assistance due to the family's "action or failure to act . . . ." At the informal hearing, "[t]he PHA and the family must be given the opportunity to present evidence, and may question any witnesses." 24 CFR 982.555(e)(5). HUD regulations have the force of law. See *Wright v Roanoke Redevelopment & Housing Auth*, 479 US 418, 431; 107 S Ct 766; 93 L Ed 2d 781 (1987).[7] Therefore, Michael's matter is a contested case, the APA governs,[8] Michael timely appealed MSHDA's decision to the trial court, and MSHDA's jurisdictional challenge fails.

### III. TRIAL COURT REVIEW OF MSHDA'S DECISION

MSHDA argues that we should reinstate its final decision terminating Michael's voucher because the trial court erred in concluding that the ALJ's factual findings were not supported by competent, material, and substantial evidence, the trial court erred in concluding that the ALJ abused its discretion by failing to consider mitigating circumstances, and Michael erred in arguing that MSHDA failed to consider its reasonable accommodation.

A trial court must generally uphold a final agency decision unless it is "contrary to law," "arbitrary, capricious, or a clear abuse of discretion," or unsupported "by competent, material and substantial evidence." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 583; 701 NW2d 214 (2005). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Id*. at 584 (quotations and citation omitted). If substantial evidence supports an agency decision, a trial court "may not substitute its judgment for that of the agency." *Id*.

We review a trial court's "review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous

---

[6] Federal regulations call a single "person or group of persons" "approved to reside in a unit with assistance" a "Family." 24 CFR 982.4.

[7] Further, MSHDA's administrative plan cites 24 CFR 982.555. Plan, ch 16-III.C.

[8] Contrary to MSHDA's argument, *Pontiac Food Ctr v Dep't of Community Health*, 282 Mich App 331, 336-338; 766 NW2d 42 (2008), agreed with the rule that where an evidentiary hearing is required by federal regulations, the matter is a contested case, and the APA's appeal procedures apply. *Pontiac Food Ctr*'s ultimate conclusion that an evidentiary hearing was a contractual right and that the parties' contract did not reference the APA is distinguishable. In Michael's case, the parties have no contract establishing the procedure for administrative appeals.

standard of review." *Id.* at 585. A finding is clearly erroneous if we review the record and are "left with a definite and firm conviction that a mistake has been made." *Id.*

Federal regulations detail whether a PHA can terminate a participant's housing voucher "because of the family's action or failure to act." 24 CFR 982.552(a)(1). 24 CFR 982.552(b) states that a PHA must terminate assistance in several situations, including "illegal drug use, other criminal activity, and alcohol abuse that would threaten other residents," as described in 24 CFR 982.553, when a family is "evicted from housing assisted under the program for serious violation of the lease," if a family member "fails to sign and submit consent forms for obtaining information," if a family member "does not establish citizenship or eligible immigration status," or if a "family member fails to meet the eligibility requirements concerning individuals enrolled at an institution of higher education." 24 CFR 982.552(c) lists other situations in which a PHA has the "[a]uthority to . . . terminate assistance." Specifically, a "PHA may . . . terminate program assistance for a participant" "[i]f the family violates any family obligations under the program" as outlined in 24 CFR 982.551. 24 CFR 982.552(c)(1)(i). According to 24 CFR 982.551, obligations include:

> (b) Supplying required information—
>
> (1) The family must supply any information that the PHA or HUD determines is necessary in the administration of the program, including submission of required evidence of citizenship or eligible immigration status (as provided by 24 CFR part 5). 'Information' includes any requested certification, release or other documentation.
>
> (2) The family must supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition in accordance with HUD requirements.
>
> (3) The family must disclose and verify social security numbers (as provided by part 5, subpart B, of this title) and must sign and submit consent forms for obtaining information in accordance with part 5, subpart B, of this title.
>
> (4) Any information supplied by the family must be true and complete.
>
> * * *
>
> (h) Use and occupancy of unit.—
>
> * * *
>
> (2) The composition of the assisted family residing in the unit must be approved by the PHA. The family must promptly inform the PHA of the birth, adoption or court-awarded custody of a child. The family must request PHA approval to add any other family member as an occupant of the unit. No other person [i.e., nobody but members of the assisted family] may reside in the unit (except for a foster child or live-in aide as provided in paragraph (h)(4) of this section).

(4) If the PHA has given approval, a foster child or a live-in-aide may reside in the unit. The PHA has the discretion to adopt reasonable policies concerning residence by a foster child or a live-in-aide, and defining when PHA consent may be given or denied.

In this case, the ALJ evaluated whether MSHDA could terminate Michael's voucher. The ALJ considered testimony presented at the hearing and numerous exhibits. He found that MSHDA approved Michael to participate in the voucher program and that Michael agreed to comply with federal regulations and MSHDA program policies. Further, the ALJ found that Angela's testimony and other documentation showed that she lived with Michael, and that both Douglas and Michelle reported Michael's address as their own, as reflected on multiple documents. However, the ALJ determined that Michael "did not disclose or certify that any other person was a family member in [his] assisted unit," Michael's testimony that others used his home only to collect mail "lack[ed] credibility," as did the testimony of Douglas and Angela, and MSHDA did not authorize Sloan to be a member of Michael's household. Therefore, the ALJ determined that Michael failed to report the persons living in his home and failed "to report all income that came to the assisted unit," citing Michael's obligations pursuant to 24 CFR 982.551(b). Thus, the ALJ recommended termination of Michael's voucher, citing 24 CFR 982.552(c)(i). MSHDA followed his recommendation and terminated Michael's assistance.

## A. SUBSTANTIAL EVIDENCE

The trial court clearly erred when it concluded that MSHDA's decision was not supported by competent, material, and substantial evidence. Further, the trial court improperly substituted its judgment for the ALJ's, see *Hodge v US Security Assoc, Inc*, 497 Mich 189, 193-195; 859 NW2d 683 (2015), and, in doing so, made several errors.

The trial court erred when it found that the evidentiary record was "bereft of evidence" that Michael intended to withhold information about his family composition. At the evidentiary hearing, Michael acknowledged that each year he signed and returned documents to MSHDA that asked him to truthfully state his family's composition and income. Michael also knew that, for a 10-year period, these forms did not list a live-in aide. There is no dispute that during this period at least two other individuals—Angela and Sloan—lived with Michael. Minimal circumstantial evidence is sufficient to prove intent. See *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). This evidence allows the inference that Michael intentionally withheld information regarding his family composition from MSHDA.

The trial court also erred when it determined that the "ALJ relied on an unidentified confidential informant" to conclude that "unauthorized individuals lived in the unit and paid rent to" Michael. Although MSHDA's investigation of Michael's compliance with the housing program began with a tip from an unidentified informant, the ALJ did not rely on this tip in reaching his decision. Rather, the ALJ relied on evidence unearthed during MSHDA's subsequent investigation, exhibits submitted by both parties, and testimony adduced at the evidentiary hearing to find that unauthorized individuals lived in Michael's home.

The trial court further erred when it examined whether the evidentiary record supported the ALJ's conclusion that Douglas and Michelle resided with Michael. The trial court analyzed the requirements to establish a domicile. But the term "domicile" "has a precise, technical meaning in Michigan's common law," distinct from the concept of residency. *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 493-494; 835 NW2d 363 (2013). Specifically, a person may only have one domicile, but can have multiple residences. *Id*. 24 CFR 982.551 and 24 CFR 982.552(c)(1)(i) refer to residency, not domicile. Therefore, the trial court's focus on the requirements to establish domicile was misplaced. Thus, the trial court clearly erred in concluding that the ALJ's factual findings and conclusions were not supported by competent, material, and substantial evidence.

## B. MITIGATING CIRCUMSTANCES

However, the trial court did not clearly err when it concluded that the ALJ abused its discretion when he failed to consider mitigating circumstances.

As discussed above, this case only involves circumstances where termination is permitted pursuant to 24 CFR 982.552(c), but not required as in 24 CFR 982.552(b). 24 CFR 982.552(c) lists grounds for which a PHA like the MSHDA has the "[a]uthority to . . . terminate assistance" and further states:

> (2) Consideration of circumstances. In determining whether to deny or terminate assistance because of action or failure to act by members of the family:

> (i) The PHA may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.

Our goal when interpreting a federal regulation, as when interpreting a statute, is to enforce the plain meaning of the regulation as intended by the drafter. See *United Parcel Serv, Inc v Bureau of Safety & Regulation*, 277 Mich App 192, 202-203; 745 NW2d 125 (2007). Therefore, to determine whether the regulation requires a PHA to consider mitigating circumstances, we begin by looking at the regulation's plain language. The regulation provides that a "PHA may consider all relevant circumstances such as . . . mitigating circumstances related to the disability of a family member." 24 CFR 982.552(c)(2)(i). Generally, we treat the word "may" as a permissive word, not a command. See *Mull v Equitable Life Assurance Society of the United States*, 444 Mich 508, 519; 510 NW2d 184 (1994). However, that general rule does not apply if the regulation's use of the word in context indicates that the drafter used the term may as a command. *Id*. For example, we must avoid a construction of a regulation that would render any portion of the regulation nugatory, which occurs "when an interpretation fails to give the provision meaning or effect." See *Empson-Laviolette v Crago*, 280 Mich App 620, 629-630; 760 NW2d 793 (2008).

When read in context by comparing the mandatory termination directive in 24 CFR 982.552(b) and permissive termination in 24 CFR 982.552(c), subsection (c)'s directive that the PHA "may consider" mitigating circumstances becomes a command.[9]

Some of our sister courts have reached the same conclusion. The Court in *Gaston v CHAC, Inc*, 375 Ill App 3d 16, 24; 872 NE2d 38 (2007), concluded that under 24 CFR 982.552(c), "the agency must consider some circumstances particular to the individual case, otherwise section 982.552's distinction between mandatory and discretionary terminations becomes meaningless." If an agency fails to consider mitigating factors, an Illinois court will remand to the agency for their consideration. *Lipscomb v Housing Auth of Cook Co*, 2015 IL App (1st) 142793, ¶ 28; 399 Ill Dec 148; 45 NE3d 1138 (2015). Relatedly, the Court in *Carter v Lynn Housing Auth*, 450 Mass 626, 634-638; 880 NE2d 778 (2008), concluded that the combination of 24 CFR 982.552(c) and 24 CFR 982.555(e)(6)'s directive that the agency make factual decisions relating to individual circumstances requires an agency to demonstrate an awareness of its discretionary authority to consider mitigating circumstances pursuant to 24 CFR 982.552(c). The Court in *Bowman v Des Moines Muni Housing Agency*, 805 NW2d 790, 801 (Iowa, 2011), recognized that the agency must acknowledge its discretion to consider mitigating factors. If the agency fails to acknowledge its discretion to consider mitigating circumstances, an Iowa court will also reverse and remand to the agency. *Daniels v Des Moines Muni Housing Agency*, 791 NW2d 427 (Iowa App, 2010). We find this nonbinding authority persuasive, see *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 414; 761 NW2d 371 (2008), in light of our regulatory interpretive scheme of reading terms in context and interpreting a regulation such that no provision is rendered nugatory.[10]

In this case, neither MSHDA's termination notice, nor the ALJ's proposal for decision, nor MSHDA's final decision and order, acknowledged that MSHDA had the authority to consider mitigating circumstances pursuant to 24 CFR 982.552(c)(2) or actually considered mitigating circumstances, such as Michael's cerebral palsy. Instead, the ALJ and MSHDA

---

[9] Chapter 12 of MSHDA's Administrative Plan is not inconsistent with this conclusion. For example, it states that "HUD requires the PHA to terminate assistance" in some situations and "permits the PHA to terminate assistance" in other situations. Plan, ch 12-I.A (emphasis in original). Chapter 12-I.E. discusses authorized terminations, cites 24 CFR 982.552(c), notes that the PHA has "discretion" to determine whether to terminate assistance, and states that "[i]n making its decision to terminate assistance, MSHDA will consider" "other factors described in Section[] 12-II.D." Chapter 12-II.D. states that "MSHDA will consider the following facts and circumstances when making its decision to terminate assistance:" "including whether the culpable family member is a . . . person with disabilities" and that "[b]efore terminating assistance, MSHDA will also consider the mitigating circumstances related to a disability."

[10] Other sister courts have held that 24 CFR 982.552(c)(2) does not require consideration of mitigating factors. See, e.g., *Peterson v Washington Co Housing & Redevelopment Auth*, 805 NW2d 558, 563-564 (Minn App, 2011); *Robinson v Dist of Columbia Housing Auth*, 660 F Supp 2d 6, 17 (D DC, 2009). But because this conclusion is contrary to Michigan's regulatory interpretive scheme, we do not find these opinions persuasive.

simply concluded that Michael violated 24 CFR 982.552(c)(1) and, therefore, MSHDA could terminate his voucher. This automatic conclusion is contrary to 24 CFR 982.552's regulatory scheme. "[A]n administrative agency empowered to exercise discretion abuses its discretion and errs as a matter of law when it absolutely refuses in every and any instance to exercise its discretion." *Rockwell v Crestwood Sch Dist Bd of Ed*, 393 Mich 616, 643 n 35; 227 NW2d 736 (1975). Therefore, the trial court did not clearly err when it concluded that the ALJ abused its discretion when he failed to consider mitigating circumstances as required by 24 CFR 982.552(c).

## C. ACCOMMODATION

Further, the parties dispute whether the ALJ, and accordingly MSHDA, erred in failing to consider Michael's request for a reasonable accommodation.

24 CFR 982.552(c)(2)(iv) states that "[i]n determining whether to . . . terminate assistance because of action or failure to act by members of the family: . . . [i]f the family includes a person with disabilities, the PHA decision concerning such action is subject to consideration of reasonable accommodation in accordance with part 8 of this title."

MSHDA's Administrative Plan elaborates on this requirement. The plan quotes 24 CFR 982.552(c)(2)(iv) and then states that MSHDA's policy is:

> If the family indicates that the behavior of a family member with a disability is the reason for a proposed termination of assistance, MSHDA will determine whether the behavior is related to the disability. If so, upon the family's request, MSHDA will determine whether alternative measures are appropriate as a reasonable accommodation. MSHDA will only consider accommodations that can reasonably be expected to address the behavior that is the basis of the proposed termination of assistance. [Plan, ch 12-II.D.]

MSHDA then refers to its reasonable accommodation policy in chapter 2. Plan, ch 12-II.D. Chapter 2-II.H. states that a "PHA's decision to . . . terminate the assistance of a family that includes a person with disabilities is subject to consideration of reasonable accommodation," that "[w]hen reviewing reasonable accommodation requests, the PHA must consider whether any mitigating circumstances can be verified to explain and overcome/alleviate the problem that led to the PHA's decision to deny or terminate assistance," and that "[i]f a reasonable accommodation will allow the family to meet the requirements, the PHA must make the accommodation."

After receiving MSHDA's termination notice, Michael requested a reasonable accommodation under the Fair Housing Act, see 42 USC 3604(2) and (3)(B); 24 CFR 100.204, seeking the ability to maintain a live-in aide to provide his personal care. He argued at the evidentiary hearing before the ALJ that his need for an accommodation was a mitigating circumstance that MSHDA should consider when determining whether to terminate his voucher. However, the ALJ concluded that Michael's request for a reasonable accommodation was "not relevant" and was made "far too late." Michael then argued that MSHDA should address his request for a reasonable accommodation when he raised exceptions to the ALJ's termination

recommendation. But MSHDA's final decision and order gives no indication that it considered Michael's request for a reasonable accommodation when deciding whether to terminate his voucher. To the extent that MSHDA failed to consider whether Michael's request for a reasonable accommodation could address the circumstances that led to termination, it erred. Therefore, the MSHDA should comply with 24 CFR 982.552(c)(2)(iv) and its administrative plan on remand.

We vacate the trial court's order and remand to the MSHDA for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Michael J. Talbot
/s/ Peter D. O'Connell