COCHRAN, Judge *109 In this certiorari appeal, relator challenges the decision of the Scott County Community Development Agency (Scott County) to include certain funds that she received as part of a state government program in its calculation of her family's annual income under 24 C.F.R. § 5.609 (2018) for purposes of determining eligibility for the Section 8 housing choice voucher program. Relator further argues that Scott County violated her due-process rights because the Scott County hearing officer who considered the issue consulted with a third party about the state government program after relator's hearing. Because Scott County correctly interpreted 24 C.F.R. § 5.609, and because relator does not assert any prejudice from the alleged due-process violation, we affirm.
FACTS
Relator Cindi Ali participates in the Section 8 housing choice voucher program (the Section 8 program), a federal program administered by Scott County. The Section 8 program subsidizes housing for families who meet certain income criteria. Scott County calculates Ali's income on an annual basis to determine her eligibility for the Section 8 program and the amount of benefits that she receives.
Ali also participates in a state government program known as the Consumer Direct Community Support (CDCS) program. The Minnesota Department of Human Services administers the CDCS program. The program provides an annual budget to families to assist in keeping developmentally disabled family members in their homes rather than in institutions. Ali is eligible for the CDCS program because she has a developmentally disabled child. From September 1, 2017, through August 31, 2018, the CDCS program provided Ali's family $ 73,248.20 in benefits.
Under the CDCS program, families are assigned a total lump sum budget. The family decides how to allocate the total budget. Ali allocated part of her CDCS benefits to pay herself for care that she provides for her child. Ali's budget called for her to be paid $ 16.75 per hour for 36.75 hours per week for her care for her child, for an annual total of $ 32,009.25. Ali only receives these payments if she files a timesheet tracking her weekly hours. Ali pays income taxes on these payments. Ali's budget allocated most of the remaining funds to pay for respite staff and support staff to come into the home for a total of 48 hours per week.
In late 2017, Scott County determined that the money that Ali receives from the CDCS benefits for care that she personally provides for her child (the parent-allocated portion) must be included when calculating her family's annual income under 24 C.F.R. § 5.609 for the purposes of the Section 8 program, but that the rest of the CDCS benefits are excluded under 24 C.F.R. § 5.609(c)(16). Ali disagreed with Scott County's interpretation of the federal regulation, arguing that Scott County should exclude the entire CDCS benefits package when calculating her family's annual income, and she requested an informal hearing on the issue.
During the hearing, Scott County and Ali each presented their arguments as to whether the parent-allocated portion of the CDCS benefits constitutes annual income under 24 C.F.R. § 5.609. Following the informal hearing, the hearing officer contacted an individual who works with the CDCS program to obtain further clarification *110 on Ali's benefits. The individual told the hearing officer that Ali had multiple options for how to allocate the CDCS benefits and chose to keep a portion "as a wage for taking care of her child."[1] The hearing officer determined that the parent-allocated portion of the CDCS benefits constitutes annual income under 24 C.F.R. § 5.609 for purposes of the Section 8 program. Ali requested that Scott County reconsider the hearing officer's determination, and Scott County denied her request.
This appeal follows.
ISSUES
ANALYSIS
I. Scott County correctly determined that the parent-allocated portion of the CDCS benefits constitutes annual income for the purposes of 24 C.F.R. § 5.609.
Federal law authorizes local government agencies to administer the Section 8 program. 42 U.S.C. §§ 1437f (2012 & Supp. V 2017), 3535(d) (2012) ; 24 C.F.R. §§ 982.1(a)(1), .201(a) (2018). Eligibility is based primarily on the family's annual income as defined in federal regulations. 42 U.S.C. § 1437f(o)(4) ; 24 C.F.R. § 982.201 (2018).
Ali argues that Scott County erred in interpreting 24 C.F.R. § 5.609, the federal regulation that defines annual income for purposes of the Section 8 program. We review Scott County's interpretation of the federal regulation de novo. In re Reichmann Land & Cattle, LLP , 867 N.W.2d 502, 506 (Minn. 2015) ; Peterson v. Wash. Cty. Hous. & Redevelopment Auth. , 805 N.W.2d 558, 561 (Minn. App. 2011) (applying de novo review to a county housing authority's interpretation of federal regulations), review denied (Minn. Oct. 26, 2011). Based on our review of the regulation, we conclude that Scott County did not err in its interpretation.
"When interpreting a statute or regulation, we first look to see whether the statute or regulation is clear or ambiguous on its face." In re Cities of Annandale & Maple Lake NPDES/SDS Permit Issuance for Discharge of Treated Wastewater , 731 N.W.2d 502, 516 (Minn. 2007) (interpreting a federal regulation); see also Exelon Generation Co., LLC v. Local 15 Int'l Bhd. of Elec. Workers , 676 F.3d 566, 570 (7th Cir. 2012) (stating that the same rules of construction apply to federal administrative rules as to statutes). "[A] regulation is ambiguous if it is unclear or reasonably susceptible to more than one reasonable interpretation. But the fact that a word has more than one meaning does not necessarily mean it is ambiguous." Annandale , 731 N.W.2d at 517 (citation omitted). Rather, "our determination of whether words or phrases are ambiguous does not depend on a reading of those words or phrases in isolation, but relies on the meaning assigned to the words or phrases in accordance with the apparent purpose of the regulation as a whole." Id. If the words of the regulations are clear and free of ambiguity, "we apply the plain and ordinary meaning of the words used." Johnson v. Paynesville Farmers Union Coop. Oil Co. , 817 N.W.2d 693, 707-08 (Minn. 2012) ;
*111 see also Minn. Stat. § 645.16 (2018) ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.").
We begin our analysis by reviewing the language of the regulation. The regulation at issue, 24 C.F.R. § 5.609, defines annual income for purposes of the Section 8 program broadly. "Annual income" includes "all amounts, money or not," which "[g]o to, or on behalf of, the family head or spouse (even if temporarily absent) or to any other family member" unless the amounts are "specifically excluded in paragraph (c) of this section." 24 C.F.R. § 5.609(a)(1), (3). Paragraph (c) lists a number of exclusions. One of the exclusions is for "[a]mounts paid by a State agency to a family with a member who has a developmental disability and is living at home to offset the cost of services and equipment needed to keep the developmentally disabled family member at home." 24 C.F.R. § 5.609(c)(16) (emphasis added).
The parties disagree as to what amounts paid by the CDCS program to a parent of a child with a developmental disability are properly excluded under the language of paragraph (c)(16). Scott County argues that the language does not exclude the parent-allocated portion of the CDCS benefits because that money does not offset any "cost" of services or equipment. Ali counters that she incurs an opportunity cost by staying home to care for her child and that the parent-allocated portion of the CDCS benefits should be excluded from the annual income as a "cost" under paragraph (c)(16). The parties' disagreement turns on the meaning of the word "cost."
Because the word "cost" is not defined in the regulation, we consult the dictionary definition to ascertain the ordinary meaning of the word. See Sorchaga v. Ride Auto, LLC , 909 N.W.2d 550, 555 (Minn. 2018) (considering dictionary definitions in concluding that a statute was not ambiguous); Citizens Advocating Responsible Dev. v. Kandiyohi Cty. Bd. of Comm'rs , 713 N.W.2d 817, 828 n.9 (Minn. 2006) (noting that regulations are governed by the same general rules of construction that apply to statutes). The word "cost" is defined as "[a]n amount paid or required in payment for a purchase; a price." The American Heritage Dictionary of the English Language 424 (3rd ed. 1992); see also Black's Law Dictionary 423 (10th ed. 2014) (defining cost as "[t]he amount paid or charged for something; price or expenditure"). When read in context, the exclusion in paragraph (c)(16) requires that in order for there to be a "cost" of services or equipment to "offset," there must be an amount of money paid or an expenditure of money by the family for services or equipment.
In determining whether the word "cost" is clear or ambiguous, we also consider the use of the word "cost" in the context of the regulation as a whole. See Reichmann , 867 N.W.2d at 506. Conflicting interpretations of the same word used multiple times in a statute or regulation are not favored. Wilbur v. State Farm Mut. Auto. Ins. Co. , 892 N.W.2d 521, 524 (Minn. 2017) ; see also Akers v. Akers , 233 Minn. 133, 46 N.W.2d 87, 92 (1951) (holding that the same word used in different paragraphs of the same statute must be given the same meaning). The regulation, 24 C.F.R. § 5.609, uses the word "cost" in two other places besides the exclusion in paragraph (c)(16). In both places, the word "cost" is used according to its ordinary meaning of an amount paid. Paragraph (c)(4) of the regulation, another exclusion, provides that "[a]mounts received by the *112 family that are specifically for, or in reimbursement of, the cost of medical expenses for any family member" are not included in annual income. 24 C.F.R. § 5.609(c)(4). In this context, the word "cost" can only be understood to refer to a monetary amount paid for medical services. Similarly, paragraph (b)(6)(ii) uses "cost" to mean an amount of money paid, as in "the actual cost of shelter and utilities" for a welfare recipient. 24 C.F.R. § 5.609(b)(6)(ii). When read in the context of the entire regulation, not just the specific exclusion in paragraph (c)(16) at issue in this case, it is clear that the word "cost" means a monetary expenditure.
Ali argues that the word "cost" as used in the exclusion also includes "opportunity costs" that a parent incurs by foregoing other employment to stay home with a child. But that is not the natural reading of the word "cost" and Ali's interpretation of the word "cost" is inconsistent with the use of the word "cost" elsewhere in the same regulation.
When interpreting the regulation, we are also guided by the principle that we are to "give effect to all of the [regulation's] provisions; no word, phrase, or sentence should be deemed superfluous, void, or insignificant." Reichmann , 867 N.W.2d at 509 (quotations omitted) (applying this rule of construction to statutes); see also Minn. Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all its provisions."). The language in paragraph (c)(16) excludes "[a]mounts paid by a State agency to a family with a member who has a developmental disability and is living at home to offset the cost of services and equipment needed to keep the developmentally disabled family member at home." 24 C.F.R. § 5.609(c)(16) (emphasis added). Ali's proposed reading of the language would render the phrase "to offset the cost of services and equipment" superfluous and insignificant. If the regulation was meant to exclude all amounts provided by a state agency to help keep a developmentally disabled family member at home, as Ali suggests, it would not have been necessary to include the language "to offset the cost of services and equipment." Instead, the regulation could have omitted that language and simply provided an exclusion for "[a]mounts paid by a State agency to a family with a member who has a developmental disability and is living at home needed to keep the developmentally disabled family member at home." To give effect to the phrase "to offset the cost of services and equipment," we must read the regulation as excluding only amounts that offset monetary costs that a family incurs.
We conclude that the language of 24 C.F.R. § 5.609(c)(16) is clear and unambiguous. Paragraph (c)(16) only excludes amounts paid by a state agency to a family to offset monetary expenses incurred by the family for services or equipment to keep a developmentally disabled family member living at home.[2]
*113 Having determined that the language of 24 C.F.R. § 5.609(c)(16) is unambiguous, we apply the plain language of the exclusion to the facts of this case to determine whether Scott County erred when it included the parent-allocated portion of the CDCS benefits in Ali's "annual income" in determining Ali's eligibility for the Section 8 program. As discussed above, "annual income" includes all amounts of money that the family receives which are not specifically excluded in paragraph (c) of the regulation. 24 C.F.R. § 5.609(a). The regulation excludes "[a]mounts paid by a state agency to a family ... to offset the cost of services and equipment needed to keep a developmentally disabled family member at home." 24 C.F.R. § 5.609(c)(16) (emphasis added). The money that Ali receives from the parent-allocated portion of the CDCS benefits is money paid by a state agency to keep a developmentally disabled family member at home but does not offset any "cost" of services or equipment. Ali receives the parent-allocated portion of the CDCS benefits for care that she provides for her child. The family incurs no "cost" for those services. The funds do not "offset" any monetary expenditure or "cost" that the family incurs. Accordingly, Scott County did not err when it determined that the parent-allocated portion of the CDCS benefits is not excluded from the calculation of annual income under 24 C.F.R. § 5.609.
II. Ali's assertion of a procedural-due-process violation does not support reversal because she does not assert any prejudice from the alleged violation.
An informal hearing determining an individual's eligibility for the Section 8 program implicates the individual's procedural-due-process rights. See Wilhite v. Scott Cty. Hous. & Redevelopment Auth. , 759 N.W.2d 252, 258 (Minn. App. 2009) (considering whether an individual's procedural-due-process rights were violated during an informal eviction hearing); see also Goldberg v. Kelly , 397 U.S. 254, 261-63, 90 S.Ct. 1011, 1017-18, 25 L.Ed.2d 287 (1970) (holding that termination of an individual's welfare benefits implicates her due-process rights). "Although the amount of process due in a particular case varies with the unique circumstances of that case, prejudice as a result of the alleged violation is an essential component of the due process analysis." In re Child of B.J.-M. , 744 N.W.2d 669, 673 (Minn. 2008) (citation omitted).
In this case, Ali argues that her due-process rights were violated when the Scott County hearing officer received information after her hearing. But the facts of this case are not in dispute, and we conducted a de novo interpretation of 24 C.F.R. § 5.609(c)(16). Ali's counsel acknowledged during oral arguments that, as long as our decision is not influenced by the information received after her hearing, Ali did not suffer any prejudice. Because our decision is based on our legal interpretation of 24. C.F.R. § 5.609(c)(16), rather than any information received by the hearing officer after the hearing, Ali did not suffer any prejudice.
DECISION
Because 24 C.F.R. § 5.609(c)(16) does not exclude the parent-allocated portion of the CDCS benefits, Scott County did not err in including those amounts when calculating Ali's annual income for purposes of determining her eligibility for the Section *114 8 program. And because Ali did not suffer any prejudice from the alleged procedural-due-process violation, the alleged violation does not support reversal.
Affirmed.
We note that we do not put any weight on this characterization of the benefits as a wage.
Ali argues that our interpretation of 24 C.F.R. § 5.609(c)(16) contravenes the spirit of the exclusion, which she argues is to make it easier to keep developmentally disabled family members at home. But when the plain language of a regulation is clear, we may not "disregard the letter of the law under the pretext of pursuing the spirit." Reichmann , 867 N.W.2d at 511 (quotation omitted). Furthermore, we note that under Ali's interpretation of paragraph (c)(16), a parent allocating a portion of the CDCS benefits to herself would have that entire amount excluded from her annual income, but a parent working outside the home who hires someone else to come into the home to care for her child would have her income included in annual income, even if that income was the same as the benefit that the first parent allocated to herself. Ali did not point to any evidence that the intent or spirit of the regulation is to treat these two circumstances differently even though, in both situations, the CDCS money is used to keep developmentally disabled family members in the home. Nor does the plain language of the regulation suggest such an intent.